O’NIELL, Chief' Justice.
 

 The Louisiana Highway Commission is appealing from the judgments rendered in seven consolidated suits for compensation for the impairment of the value of the property of each of the plaintiffs by the construction of an approach to a bridge in front of their buildings. The plaintiffs first sued to enjoin the highway commission from constructing the approach in front of their property without having paid just and adequate compensation, as provided in section 2 of article 1 of the Constitution, for the detriment to the property. The demand for an injunction was rejected on the ground that, so far as section 2 of article 1 of the Constitution required the payment of compensation to be made in advance for the taking or damaging of private property for a public purpose, the requirement had reference only to cases where the property was to be taken or actually invaded, and not to cases where the damages would be only remote and uncertain, as in the plaintiffs’ case. It was held that in such cases the owner of the-property should await the construction of the public work, in order to determine whether in fact it would reduce the value of the property, and if so to what extent. See Kuhn v. Louisiana Highway Commission, 174 La. 990, 142 So. 149.
 

 When the construction of the approach to the bridge was completed the seven property owners who are the plaintiffs in this suit, together with the owners of three other buildings similarly situated, sued the highway commission for compensation for the alleged impairment of the value of the property of each of them. The judge of the district court gave judgment for the plaintiffs in the former suits for amounts less than they claimed. On appeal by the highway commission the judgments were set aside and the suits were dismissed as of nonsuit. See Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354.
 

 These suits are the renewals of seven of the ten suits which were dismissed as of nonsuit. Five of the plaintiffs are claiming less than they claimed in their former suits. For example, in the suit of Mrs. Flora D. Harrison et al. the plaintiffs, claimed $15,100 in their former suit, and obtained a judgment for $7,400. In the present suit they claimed $10,000 and have
 
 *350
 
 obtained a judgment for $6,000. As to the suit of J. C. Simon et al. the plaintiffs’ predecessors claimed $37,500 and obtained a judgment for $14,400; and in the present suit the plaintiffs claimed $27,500 and have obtained a judgment for $12,000. In the suit of Mrs. L. W. Bath et al. the plaintiffs claimed originally $11,700 and obtained a judgment for $4,000; and in the present suit they claimed $7,500 and have obtained a judgment for $3,400. In the suit of Dr. Paul D. Abramson he claimed originally $5,300 and obtained a judgment for $3,-500; and in the present suit he claimed $4,000 and has obtained a judgment for $3,000. In the suit of Lena J. Schnitt et al. the plaintiffs claimed originally $36,200, plus $250 per month, and obtained a judgment for only $4,000; and in the present suit they claimed $8,000 and have obtained a judgment for $3,400. In the two other suits now before the court the plaintiffs •sued for the same amount which they claimed originally. In one of the two suits Andrew Kuhn sued for $10,000 and obtained a judgment for $7,400 in the first suit and for $6,000 in this suit; and in the other suit the Noel Estate, Inc., sued for $15,000 and obtained a judgment for $7,200 in the first suit and for $6,000 in this suit.
 

 All of the plaintiffs’ buildings are business establishments fronting on Texas Street, which is one of the principal thoroughfares in Shreveport, extending from Commerce Street at Red River a distance -of seven blocks through and beyond the -commercial district. Texas Street is 100 feet wide between property lines and originally had a 12-foot sidewalk on each side. The approach to the bridge crossing Red River begins at Spring Street, one block from the river, and rises gradually to the height of approximately 20 feet above Commerce Street. The approach is a solid structure of earth and concrete for about half of the distance to Commerce Street, and for the rest of the distance is constructed on trestles. The structure is of such width as to leave a traffic lane only about 17 to 19 feet wide, on each side. In the construction of the approach it was necessary to cut away part of the sidewalk on each side of the street. For a distance of about 70 feet from Commerce Street the width of the sidewalks was reduced to 5 feet 6 inches and for the remaining distance to Spring Street the width was reduced to 8 feet.
 

 The buildings belonging to the plaintiffs are in the block between Commerce and Spring Street. One of the buildings was occupied as a wholesale establishment and the others were retail stores or saloons, patronized exclusively by people of the colored race. The measure of compensation allowed in the judgments of the district court is the diminution in the market value of the properties, respectively, resulting from the .inconvenience of having the obstruction in front of the buildings. The diminution in the market value, according to the written reasons given by the judge and the testimony upon which his judgment is founded, is based upon the reduction in the rental value of the buildings. This reduction was caused principally by the interference with traffic. The traffic lane on each side of the approach to the bridge is too
 
 *352
 
 narrow to permit large vehicles, such as trucks, to park or back up in front of the buildings on Texas Street anywhere between Commerce and Spring Street. The lanes are so narrow that they are necessarily one-way lanes. The traffic coming over the bridge from the Texas side must proceed as far as Spring Street, and, as the danger of the situation forbids the making of a left turn at Spring Street, — and as a U-turn to the right would compel the vehicle to drive against the traffic on that side of the approach, — it is necessary for a vehicle coming over the bridge from the Texas side to travel several blocks beyond the end of the bridge in order to have access to any one of the buildings of the plaintiffs.
 

 The expert appraisers who testified to the reduction in the rental value of the plaintiffs’ buildings took into consideration not only the inconvenience to the vehicle traffic but also the obstruction of light and air and the impairment of the view from the front of the buildings. The evidence leaves no doubt that all of these elements entered • into the impairment of the value of the property of the plaintiffs. And, having reviewed the testimony on the subject, we find no good reason for taking issue with the jtidge as to the amount of compensation which he allowed the plaintiffs, respectively. The difficulty which we found in the appeal from the judgments rendered in the former suits was that the period in which the bridge and its -approach were constructed was from the year .1931 to 1933, which period commenced near the beginning of the nation-wide depression in the value of real estate. It seemed likely that the depression had contributed in some measure to the reduction in the rental value of the plaintiffs’ buildings, between the years 1931 and 1933. It was contended also by the defendant that the decadence of the property on Texas Street in the first block from the river, which had been going on ever since the steamboat days, had contributed to the loss complained of. Hence it was considered difficult if not impossible to separate the extent of the diminution in value caused by the obstruction-complained of from the diminution which-resulted or might have resulted from the depression or from the gradual decadence which had been going on for many years on account of the recession of the business activities further away from the river front. The expert witnesses stated positively that they based their estimates of the diminution of the market value of the buildings only upon the reduction of the rental' value; and they explained that they had taken into consideration the possibility that the general depression, as well as the recession of business activities from the river front, might have contributed in some-measure to the diminution in the rental value, and they said that they had made allowance for these possibilities. They showed that the business property elsewhere in Shreveport had recovered from the depression, and that the gradual decline in the value of real estate in the first block on Texas Street, which had been going on for many years since the passing of the steamboat days, had come to an end at the time when the construction complained of in these suits was commenced.
 
 *354
 
 To say that the evidence in these suits does not fix the loss of each of the plaintiffs with sufficient certainty would be the same as to say that it is impossible in any case like this to fix the loss with sufficient certainty to support a judgment. These suits are not actions for damages ex contractu or ex delicto. They are actions for compensation for the lawful damaging of private property for a public purpose. In the third paragraph of Article 1934 of the Civil Code it is declared that there are cases in which damages arising either ex contractu or ex delicto may be assessed even though they cannot be calculated precisely or “altogether” on the pecuniary loss which the plaintiff has sustained, or on the pecuniary gain of which he has been deprived. That paragraph in terms refers only to damages arising from certain kinds of contracts, or arising ex delicto, and not to compensation for the damaging of private property for a public purpose. But the analogy is appropriate because of the recognition that it is not necessary that the extent of the damages of the nature claimed in these suits should be determined exactly by the evidence adduced by the plaintiff in order to sustain a judgment in his favor. The judge of the -district court rendered a written opinion in which he analyzed the testimony with great care. We do not find any of the judgments appealed from excessive.
 

 The judge first condemned the highway commission to pay the costs of court, but on a rehearing exempted the commission from liability for any and all costs except the fees 'of the stenographer or court reporter for taking the testimony. The attorneys for the highway commission contend that under Act No. 173 of 1902 and Act No. 135 of 1936 the commission is not liable for any court costs in an expropriation suit, and hence is not liable for any costs of court in these suits. Act No. 173 of 1902 merely exempts public boards and commissions from giving bonds in judicial proceedings. Act No. 135 of 1936 exempts the state and all of its subdivisions, boards and commissions from liability for court costs in judicial proceedings. But the act contains a proviso “that this Act shall have no application to stenographers’ costs for taking testimony”. The attorneys for the highway commission point out that the proviso does not appear in the title of the act. They say that they do not for that reason question the constitutionality of the act; and in fact they have no interest in questioning the constitutionality of the act because it does exempt the commission from liability for all court costs other than the fees of the stenographer or court reporter. The attorneys for the commission contend merely that as the title is an essential part of the statute it should be interpreted according to its title and hence interpreted as if there were no proviso concerning stenographers’ fees. Our opinion is that the act should be interpreted according to its text and not its title. We have no right to delete the proviso and thus give the statute an effect which the legislature did not intend. The question of liability of the highway commission for such court
 
 *356
 
 costs as are in contest here was put at rest in the decision rendered only three months ago in the case of Westwego Canal & Terminal Co. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389, where it was held that the property owner, being successful in a suit against the highway commission for the value of land taken for highway purposes, was entitled to recover the costs incurred necessarily by the plaintiff for the proving of his case.
 

 The attorneys for the highway commission complain also of that part of the judgment in which the judge allowed the plaintiffs interest from judicial demand. The attorneys for the commission contend first that the interest should be allowed only from the date of the judgments, and, in the alternative, they contend that if the interest should be allowed from the date of judicial demand the date should., be the date of the filing of the present suits, and not the date pf the filing of the original suits, which' were dismissed as of nonsuit. The judge allowed the legal rate of interest from the date of the filing of the original suits. Our opinion is that the date of judicial demand should be considered the date of filing of the present suits, which date was April 10, 1939. The original suits were filed several years before that date. There is no good reason why the defendant should be condemned to pay interest for the period between the date of the filing of the original suits and the date on which those suits were dismissed because of the failure of the plaintiffs to prove the extent of their loss. The burden was upon the plaintiffs to sustain their demands with sufficient proof; hence the delay which resulted from their bringing their suits without having sufficient evidence to support them was due to the fault of the plaintiffs and not of the "defendant. The date on which these suits were brought successfully therefore must be taken as the date of judicial demand.
 

 Our conclusion is that the interest should be calculated from the date of judicial demand, and not merely from the date
 
 pi
 
 the judgment. The attorneys for the highway commission contend that the obligation to pay interest cannot be imposed upon the state or upon a state agency unless its consent to pay interest has been given by an act of the Legislature. The attorneys cite in support of the proposition United States v. State of North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336; Seton v. Hoyt, 34 Or. 266, 55 P. 967, 43 L.R.A. 634, 75 Am.St.Rep. 641; and State ex rel. Shaw v. Police Jury of Catahoula Parish, 167 So. 754, by the Court of Appeal for the Second Circuit. Those decisions are not controlling in these cases, because there is authority for the obligation to pay interest on the amount of compensation due to the owner of private property for its being taken or damaged for a public purpose. In article 1938 of the Civil Code it is declared that all debts shall bear interest at the rate of 5% per annum from the time they become due, unless it is otherwise stipulated. The provision in section 2 of article 1 of the Constitution that private property shall not be taken or dam
 
 *358
 
 aged for a public purpose without payment of just and adequate compensation must mean that the' amount of compensation shall bear interest at the legal rate from the time when it becomes due, otherwise, especially in cases where there is considerable delay in the collection of the compensation, it would not be just or adequate compensation. By Act No. 206 of 1916 it is required that all judgments for damages ex delicto shall bear legal interest from the date of judicial demand. It was settled'by the jurisprudence antedating the act of 1916 that interest on a judgment for damages arising ex delicto could not be allowed from judicial demand but only from the date of the judgment. Morgan v. Bell, 4 Mart.O.S., 615; Pierce v. Flower, 5 Mart, O.S., 388; Lafon’s Ex’rs v. Riviere, 1 Mart.,N.S., 130; Buquoi v. Hampton, 6 Mart.,N.S., 8; Trimble v. Moore, 2 La. 577; Goldenbow v. Wright, 13 La. 371; Salmen Brick & Lbr. Co. v. Southern Pacific Co., 132 La. 356, 61 So. 401. But the distinction between a tort action and an action like this, for compensation for damaging of private property for a public purpose, was pointed out in the case of Aleman v. Sewerage & Water Board, 196 La. 428, 199 So. 380, citing the case originally brought by the plaintiffs in these suits, namely, Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354. Although the act of 1916, requiring that all judgments for damages arising ex delicto shall bear legal interest from the date of judicial demand, is not applicable to suits for compensation for the damaging of private property for a public purpose, this court seems to have taken it for granted heretofore that the interest in such cases should be allowed from the date of judicial demand and not merely from the date of the judgment. See Foster v. City of New Orleans, 155 La. 889, 99 So. 686; Booth v. Louisiana Highway Commission, 171 La. 1096, 133 So. 169; Nagle v. Police Jury, 175 La. 704, 144 So. 425; Westwego Canal & Terminal Co. v. Louisiana Highway Commission, 189 La. 870, 181 So. 429 ; Housing Authority of N. O. v. Weis, 195 La. 224, 196 So. 328. And by the Court of Appeal see Sledge v. Louisiana Highway Commission, 16 La.App. 432, 134 So. 704; Gill v. Louisiana Highway Commission, La.App., 153 So. 329; Raxsdale v. Louisiana Highway Commission, La.App., 1 So. 2d 342.
 

 In the case of Foster v. City of New Orleans, 155 La. 889, 890, 99 So. 686, the plaintiff claimed damages for the construction of a swimming pool in front of her property. The kind of damages claimed was similar to the damages claimed in these suits. The plaintiff’s demand was rejected by the Civil District Court but on appeal she was allowed $300 damages with legal interest from the date of judicial demand and all of the costs of the suit.
 

 In two cases decided by the court of appeal last February, namely, Sholars v. Louisiana Highway Commission, La.App., 6 So.2d 153, and Carter v. Louisiana Highway Commission, La.App., 6 So.2d 159, the highway commission contested the allowance of interest from judicial demand, and
 
 *360
 
 the imposing upon the commission of the costs of court, in a suit for compensation for damaging the plaintiffs’ property by the construction of an overpass and 'the approaches thereto in a public street. The court of appeal in both cases held that under section 2 of article 1 of the Constitution the plaintiffs were entitled to legal interest from judicial demand, in order to have just and adequate compensation, and that under the provisions of Act No. 135 of 1936 the highway commission was liable for the payment of the stenographer’s fees for taking the testimony. In those cases the question whether the highway commission should pay interest from judicial demand or only from the date of the judgment, and the question whether the commission should be condemned to pay the fees of the stenographer for taking the testimony, were strenuously contested, and the court’s decision against the commission on both questions was supported by a very logical opinion and sustained by citation of ample authority.
 

 The judgments appealed from are amended so as to allow the plaintiffs interest at 5% per annum on their judgments only from the date of judicial demand in these suits, that is, from the 10th day of April 1939, instead of the date of the filing of the original suits, which were dismissed as of nonsuit. As amended the judgments are affirmed. The plaintiffs, appellees, are to pay the costs of this appeal.
 

 ROGERS, J., absent.