HAMITER, Justice.
 

 From about January 1, 1934, until some time during the year 1943, the law partnership of Dickson & Denny of Shreveport represented Noel Estate, Inc., in the handling of its legal affairs, the employment agreement in 1937 and thereafter providing for the payment of $50 per month for all ■office services rendered and advice given, and of additional fees, separately adjusted, for other work performed.
 

 Among the suits instituted by the partnership for such client during the mentioned representation period was one against the Louisiana Highway Commission to recover damages for injuries to its property as the result of the construction •of a bridge and approaches thereto across Red River at the foot of Texas Street in Shreveport. The suit (filed in 1934), after having been consolidated and tried with numerous other actions of a similar nature brought by other claimants and heard by this court on two separate occasions, resulted (December 30, 1942) in a judgment in favor of Noel Estate, Inc., for $6,000 with 5% per annum interest from April 10, 1939. See Harrison et al. v. Louisiana Highway Commission et al., 191 La. 839, 186 So. 354 and same case 202 La. 345, 11 So.2d 612.
 

 On February 22, 1943-, in satisfaction of that judgment, the Highway Commission issued its draft for $6,581.09 payable to the order of Dickson & Denny, attorneys for Noel Estate, Inc. The attorneys received and deposited the draft, collecting the proceeds ; and thereafter a dispute arose as to the fee to be paid in connection with the litigation, the attorneys demanding 25% of the sum recovered and the client proposing to pay 16%%. Apparently this dispute developed into a general disagreement involving all of the business relations existing between the parties, for on June 10, 1943, the attorneys forwarded to Noel Estate, Inc., a statement, on which various and sundry other legal services rendered and suits filed were itemized, demanding payment of fees and charges totaling an amount much in excess of the sum received from the Highway Commission suit.
 

 Following receipt of the statement,. Noel Estate, Inc,, instituted the present action against the partnership of Dickson & Denny, as well as against the individual members thereof, to recover, and praying judgment for, the entire proceeds of the Highway Commission draft ($6,581.09), with legal interest thereon from February 26, 1943, until paid. The petition alleges, aft
 
 *160
 
 er setting forth the reason for and the manner and method of receiving the draft, that, “Defendants have not accounted to petitioner for the proceeds of said check, nor have they paid it any part thereof, notwithstanding amicable demand.” It contains no allegation regarding an offer to pay defendants, or even a showing that they are entitled to a fee, for their services in handling the litigation as a consequence of which the draft was obtained.
 

 Defendants excepted to the petition as stating neither a right nor a cause of action, and thereafter, on the exceptions being overruled, they answered alleging the above mentioned dispute relative to the percentage of the proceeds to be paid (whether 25% or 16%%) as a fee in handling the Highway Commission litigation. Coupled with the answer was a reconventional demand, in which defendants claimed not only a fee for that litigation but also fees for various other unrelated services rendered and suits filed during a period of years, and an alternative plea of set-off and compensation. They prayed for a rejection of plaintiff’s demands and for judgment in reconvention for $16,520.27. In the alternative they prayed for judgment “decreeing that the said claims of your defendants set-off and compensate any claims that the said plaintiff may have against defendants.”
 

 During the trial of the case, on objections being urged by counsel for plaintiff, the court excluded all evidence relating to defendants’ reconventional demand and alternative plea of compensation except with respect to the claim for a fee for services rendered in the Highway Commission litigation. Whereupon, defendants invoked the supervisory jurisdiction of this court, complaining of the exclusion of evidence. After considering their application (No. 37,480 on the docket of this court) we refused to issue the remedial writs sought, assigning as our reason for the refusal that the ruling complained of was correct.
 

 At the conclusion of the trial the court rendered judgment in favor of plaintiff and against the defendants for the sum of $5,264.87, with legal interest thereon from February 26, 1943, until paid, and all costs of the suit. The named sum represented the proceeds of the draft collected less 20%> thereof ($1,316.22), the court obviously allowing that percentage as a fee for handling the Highway Commission litigation.
 

 On this appeal, which was perfected by defendants, it is principally urged that the exceptions of no right and no cause of action should have been sustained. Under them defendants contend that plaintiff is without right to institute a suit for a specific sum against its attorneys, as is attempted here; that its only recourse under the circumstances is to sue for a general accounting. They insist, in other words, that an attorney can be sued by his client only for an accounting relative to his entire services rendered, including not only those given in the particular suit produc
 
 *161
 
 ing the funds received but also those in unrelated litigation and matters. In support of this contention they cite Butchers’ Union Slaughterhouse and Live Stock Landing Company v. Crescent City Live Stock Landing and Slaughterhouse Company, 41 La.Ann. 355, 6 So. 508, and Pease v. Gatti, 202 La. 698, 12 So.2d 684.
 

 In the Butchers’ Union case, it is true, the court did sanction an accounting as between the principal and agent, and it permitted the attorney to retain the funds recovered in one particular suit in payment of charges and fees due in other suits. But the decision, as we appreciate it, is not authority for defendants’ position here; the facts of the two cases are quite dissimilar. In that cause, instituted by the client to recover funds which the attorney received in the -last suit of a series of suits, the contract of employment between the parties concerned only a particular and certain phase of the client’s operations, did not extend generally to unrelated matters, and recited a specific fee for the services contemplated. It provided in part [41 -La. Ann. 355, 6 So. 509]:
 

 “It is hereby agreed between B. R. For-man, attorney at law, and the Butchers’ Union Slaughter-house & Live-Stock Landing Company, that said Forman shall undertake the management of all cases now pending in court to which the said Company is a party, and any case that may arise having for its object to establish the right of said company to keep slaughterhouses and stock landings at such place or places as the city council may designate, with the approval of the board of health, or to prevent them from doing their business.
 

 * * * * * *
 

 “Any suits brought to collect stock subscriptions or other suits not involving the rights of the Butchers’ Company to do business shall be paid for by usual and customary fees.”
 

 In keeping with that contract all of the cases handled by the attorney and for which he claimed fees, including the last one that provided the funds received, had as their single purpose the establishment of the right of the client to conduct the business in which it was engaged; they were related, connected suits, handled under a single mandate with the view of accomplishing one result. And this solidarity of mandate was important in the rendering of the decision, for in the opinion it is said:
 

 “This case is a peculiar one. All of defendant’s services were rendered under a single contract, which we have copied in the beginning of this opinion.
 

 “In a suit brought by the predecessor of defendant as attorney of this very company, for fees due him, an exception was interposed to his petition on the ground that he claimed a certain fee in lump without specifying the amount due in each particular case. The contract proved was similar to the present one, and we said:
 

 
 *162
 
 “ ‘Considering that he was employed as counsel of the company under a general retainer; that the object to be attained by the various services was the single one of maintaining defendant’s right to conduct its business in the parish of Orleans; that this was the object and purpose of plaintiff’s employment, and the services were all subsidiary thereto, — we think the plaintiff was justified in treating the whole as substantially one service, and claiming a lump consideration therefor.’ * * *
 

 “We cannot take a different view of the services rendered by defendant under his contract. They were all conducive to, or growing out of, the principal object of the employment. The suit in which the fund in controversy was recovered was an action for damages for the wrongful issuance of an injunction in the very suit in which the supreme court of the United States finally determined the main question of plaintiff’s right, ([Butchers’ Union Slaughter-House & Live-Stock Landing Co. v. Crescent City Live-Stock Landing & Slaughter-House Co.], 111 U.S. 746, 4 S.Ct. Rep. 652, [28 L.Ed. 585]) and the attorneys’ fees therein were an element of the damages claimed.”
 

 Clearly this language does not support defendants’ contention in the instant cause that an attorney, in the absence of a specific agreement, can retain funds of his client derived from a particular suit in payment of fees earned in other entirely disassociated and unrelated matters.
 

 Neither does the other cited case (Pease v. Gatti) lend assistance to defendants’ position. An accounting was ordered therein by this court merely because the true value of the mortgage note involved was not definitely shown
 
 by
 
 the record.
 

 Defendants’ exceptions of no right and no cause of action, therefore, were properly overruled.
 

 Coming now to the merits of the case, the district court, as we previously held when considering defendants’ application for remedial writs, correctly excluded all evidence pertaining to the reconventional demand and plea of compensation except that relating to the claim for a fee in the Highway Commission litigation. Article 375 of the Louisiana Code of Practice provides in part: “In order to entitle the defendant to institute a demand, in re-convention, it is required that such demand, though different from the main action, be, nevertheless, necessarily connected with and incidental to the same; * *
 

 And for compensation to take place between two debts they must be equally liquidated. Revised Civil Code Article 2209. The fees and charges claimed in defendants’ reconventional demand, other than those for services in the Highway Commission litigation, are not connected with or incidental to the subject of the main action herein. This is clearly shown by defendants’ answer, one allegation of which is “that on or about during the year 1934, the Noel Estate, Incorporated, employed
 
 *163
 
 your defendants as attorneys to handle their legal business, and agreed to pay them for assisting in their office work and giving advice, the sum of Fifty & No/100 ($50.-00) Dollars per month, and any other fees for work done was to be separately adjusted and paid.” Neither are they liquidated as required by the cited codal article dealing with compensation. In a separate suit, however, defendants may seek to recover such fees and charges, and in this connection all of their rights should and will b.e reserved.
 

 Regarding the fee to be paid defendants for services rendered in the Highway Commission litigation, plaintiff, as above pointed out, tendered nothing on the filing of this suit, although previously (when the dispute arose) it proposed to pay 16%% of the amount recovered. Defendants have contended and they insist that they are entitled to at least 25%. The district court, by way of set-off, awarded them 20%.
 

 The Highway Commission litigation extended over a period of almost 10 years, and it was heard by this court on two different occasions. Not a simple case, it required the presenting of expert testimony on valuation and involved numerous points of law. And, aside from the work required in handling the actual litigation, defendants engaged in numerous conferences and made several trips to Baton Rouge with respect to the claim.
 

 In the course of the trial herein several attorneys gave testimony respecting the value of the services rendered by defendants. One law firm, handling similar claims on the same basis as defendants, received 25% of the amount recovered. Another firm prosecuting like bridge suits, whose fees were contingent on . recovery but with the clients advancing the costs, was paid 33%% of the recovered proceeds, or a total of $4,500.
 

 Of the two attorneys called as witnesses by plaintiff, one had handled a claim in the litigation and received for his services 16%%; but he expressed no opinion as to whether 25% would be excessive. The other attorney, who did not participate in the bridge suits, testified: “As I see this case it is not strictly a contingent case. The client pays all costs but there was no agreement about the fee. Then it would resolve itself somewhat into reaching an agreement with the client. I have heard the two figures suggested here; one twenty-five percent and the other sixteen and two-thirds percent. I think that sixteen and two-thirds percent under the facts of the case would be reasonable. I do not think that twenty-five percent would be excessive.”
 

 There is nothing in the record before us indicating that the fee of 25% claimed by defendants is unreasonable or excessive for the services rendered. Rather, in view of the extended litigation anci of the conferences and trips required, and also considering as a whole the testimony given by the mentioned witnesses, we think
 
 *164
 
 it entirely reasonable and proper. Accordingly that fee will be allowed them.
 

 Furthermore, since plaintiff tendered or offered no fee whatever to defendants in connection with the filing of this suit the latter, in our opinion, should not be cast for all of the costs incurred in the trial of this case.
 

 For the reasons assigned the judgment of the district court is amended by reducing the award in favor of plaintiff from $5,264.87 to $4,935.82; by ordering the respective litigants to pay the costs of the trial court in the proportion of one-half by each; and by reserving to defendants the right to bring a separate suit for the recovery of the fees and charges listed in their reconventional demand. And as amended the judgment is affirmed. Costs of this appeal shall be paid by plaintiff.