99 So.2d 82

GRAVITY DRAINAGE DISTRICT NO. I OF RAPIDES PARISH, Louisiana,

v.

Miles J. KEY and Mrs. Madie Key and Nettie L. Moss.

No. 43309.

Jan. 6, 1958.

Gravel, Humphries, Sheffield & Mansour, Alexandria, for appellant.

J. B. Nachman, Alexandria, for Miles J. Key and Madie Key and Nettie L. Moss.

MOISE, Justice.

█ The solution of a case in law is like the threads in the weaving of a designer's hands. Each fact of record must fit in the proper place for decision. The rule of law, in expropriation suits, is that the basis of the findings must be predicated on the physical value of the property taken at the time of taking and the diminution of value to the property after the taking.

Gravity Drainage District No. I of Rapides Parish, Louisiana (plaintiff herein) was created by Resolution of the Police Jury for Rapides Parish on November 24, 1953, under the authority of LSA–R.S. 38:-1751 et seq.

Plaintiff instituted these proceedings (consolidated for trial and on appeal) against Miles J. Key and his wife, Mrs. Madie Key, and against Nettie L. Moss, for the expropriation of certain portions of defendants' properties needed for a right of way or servitude to complete its overall drainage plan. Plaintiff sought to expropriate .384 acres owned by Miles J. Key and Mrs. Madie Key, and .222 acres owned by Nettie L. Moss, for the construction of a drainage ditch averaging twenty-six to twenty-eight feet wide at the top, by six to seven feet deep, with a width of six feet at the bottom, and a slope on the sides of one and one-half to one foot.

The lands of the defendants consist of adjoining tracts fronting the Missouri Pacific Railroad, near the City of Alexandria, Louisiana, and the side of the Moss property fronts McArthur Drive, the main traffic artery from Alexandria to Baton Rouge, Louisiana. Both tracts are industrial by location, having a potential value for certain types of plants that need a spur tract and easy access to the highway. The proposed ditch is to be located between these combined tracts and the tracks of the Missouri Pacific Railroad.

The trial court stated that the only real question presented was the price to be paid by plaintiff to the defendants for the proposed right-of-way. After a detailed and scholarly discussion of the matter, it rendered judgment awarding plaintiff a servitude and/or right-of-way extending along the westerly boundary of the Key property, being a strip of land thirty-five feet wide (with the exception of the northerly portion of said strip which narrows across the

said westerly boundary of Lot 5), containing .384 acres, upon plaintiff paying Miles J. Key and Mrs. Madie Key the sum of $13,518, representing:

1. Value of 0.33 acres actually taken by the right-of-way, figured at $10,000.00 per acre .................................... $3,330.00
2. Diminution in value of remainder of industrial property ...................... 6,588.00
3. Cost of culvert over proposed ditch .... 3,600.00

The trial court rendered a separate judgment awarding plaintiff a servitude and/or right-of-way extending along the westerly boundary of the Moss property, being a strip of land thirty-five feet wide running across the westerly boundary of Lots 1 and 2 of the W. P. Flower's Subdivision of a part of Evergreen Plantation, containing .222 acres upon plaintiff paying Nettie L. Moss the sum of $13,567, representing:

1. Value of 0.222 acres actually taken by the right of way figured at $20,500.00 per acre .................................. $4,551.00
2. Diminution by $4,000.00 per acre of remainder of industrial property ........ 5,416.00
3. Cost of culvert for spur track ........... 3,600.00

The trial court also fixed the fees of plaintiff's experts and defendants' experts.

Plaintiff appealed to this Court from the above judgments, praying that they be amended to provide:

"An award to Miles J. and Madie Key in the amount of Three Thousand Eight Hundred Forty and No/100 ($3,840.00) Dollars as a fair and reasonable value for their property taken in the right of way and rejecting all claims for consequential or severance damage to their remaining property.

"An award to Nettie L. Moss in the amount of Four Thousand and No/100 ($4,000.00) Dollars as a fair and reasonable value for their property taken in the right of way and rejecting all claims for consequential or severance damage to her remaining property."

The record discloses that the defendants, Miles J. Key and Madie Key, answered the appeal, praying that the judgment in their favor be amended by increasing the award to them from $13,518 to $23,077 and allowing legal interest from judicial demand until paid on the amount fixed by this Court; and that the defendant, Nettie L. Moss also answered the appeal, praying that the judgment of $13,567 in her favor be increased to $31,392.25 and that she be allowed legal interest from judicial demand until paid on the amount fixed by this Court.

On appeal the defendants, Miles J. Key and Madie Key, accede that the amount of land actually taken for the right-of-way is .333 acres, as found by the trial judge. They also agree that a value of $10,000 an acre is adequate compensation for the expropriated area.

Plaintiff is willing to pay the Keys $3,840 (.384 acres at $10,000 an acre), if no

award is made for diminution in value of the land and the construction of culverts.

■ Since there is no dispute as to the value of the Key property herein expropriated, and since the expert testimony is to the effect that its market value for industrial purposes[1] is $10,000 per acre, we conclude that it is worth $10,000 per acre.

We find no manifest error in the following statement made by His Honor, the trial judge:

"* * * According to the calculation contained in the brief submitted by counsel for the defendants 0.333 acres of the Key property which will actually be taken for the right of way has a value of $10,000.00 per acre for industrial use because of its frontage on the railroad and therefore the price which must be paid to Mr. and Mrs. Key for this 0.333 is the sum of $3,-330.00."

With respect to the consequential or severance damages awarded for the diminution in the value of the land, Miles J. Key and Madie Key contend that the trial judge should have employed a frontage of 474.04 feet and a depth of 290 feet in computing acreage rather than a frontage between 430 and 432 feet by a depth of 210 feet. They further contend that, instead of employing a diminished valuation of $4,000 per acre, a value of $7,000 should have been used. Alternatively, they urge that if the $7,000 valuation is not allowed by this Court, they should be awarded the value of the construction of two culverts instead of one.

Plaintiff argues that the Keys should not have been awarded consequential or severance damages, since the proof of the diminution to the value of the land by the construction of the ditch was only remote or speculative. It alleges that any damages suffered were damnum absque injuria. Plaintiff further contends that a prayer for the award of damages for the diminution to the value of the land excludes a prayer for the cost of the construction of culverts. It still further urges that there can be no award for the cost of the construction of culverts, since there are no existing roads, spur tracks, or any means of ingress or egress whatsoever from the Key property to the Sterkx Road, which runs parallel with the Missouri Pacific Railroad.

The exhibits of record show some slight variation in the number of front feet of defendants' property facing the railroad. However, an examination of the entire record convinces us that the trial judge was correct in stating:

1. It is agreed that the acreage fronting the Missouri Pacific Railroad is industrial property.

"According to the plat of the Key property, marked 'P-4' for identification and filed in evidence, Mr. and Mrs. Key own a frontage of 432' on the railroad."

█ The testimony of the expert witnesses is to the effect that the Key property facing the railroad is industrial for a depth of one acre. Their testimony is not clear as to whether the depth should be calculated at 210 feet or 290 feet; but, since the trial judge saw and heard the witnesses and arrived at a conclusion of 210 feet,[2] we are not prone to disturb his findings. Gilbert v. Heintz, 231 La. 535, 91 So.2d 784; Succession of Rockwood, 231 La. 521, 91 So.2d 779.

All of the expert testimony of record is to the effect that if culverts were built, the Key property herein involved could be used for industrial purposes; otherwise, that it would assume a residential status. We believe, however, that since the property was admittedly industrial before the construction of the ditch, its best purpose would be served by permitting it to remain as such with the construction of culverts.

The expert testimony is to the effect that should the Key property become residential

because of the construction of the ditch, loss of direct access to the railroad, and one-sided railroad freight car loading, the property would be worth only approximately $3,000 per acre. The $7,000 difference between the value of $10,000 supra, and $3,000 is claimed by the Keys to be the diminution in the value of the land per acre.

Plaintiff argues that the Keys have not proved, by a preponderance of the evidence, that they will suffer any diminution in the value of their land, and that consequently they are not entitled to severance damages.

"We are aware of the decisions of this Court allowing damages claimed * * * must not be anticipated damages, nor remote or speculative. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672; Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193; American Tel. & Tel. Company of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4; State of Louisiana through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881. * * *" Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260, 267.

2. "Regarding the question of the diminution in value of the remainder of the Key property caused by the construction of this drainage ditch, Mr. and Mrs. Key, as well as Nettie Moss, do not claim any diminution in value except for that portion of their property which fronts on the railroad and is suitable for industrial use, and the experts substantially agree that only that portion of the property which fronts on the railroad and has a depth of 210' running back from the railroad is valuable for industrial purposes."

■■ We find the record replete with testimony to the effect that the Keys will suffer damages because of the severance of their land from the railroad. Relying on the testimony of W. P. Aertker, Sr., appraiser for the Home Building and Loan for eleven years, the trial judge placed a diminution value of $4,000 per acre. Since there is no other testimony as to a specific loss per acre, we agree with him on this figure. Since the property will remain industrial and will be reduced in value only to a small extent, we cannot agree with the Keys that they will suffer a loss of $7,000 per acre. There is no violation of Article I, sec. 2, of the Louisiana Constitution of 1921, LSA. We find no merit to plaintiff's arguments that the damages for the diminution in the value of the land are remote and speculative.

Relative to the property of the defendant, Miss Nettie L. Moss, the trial judge stated in his reasons for judgment:

"* * * we find that the portion thereof with which we are concerned fronts 264.08 feet on the right of way of the Missouri-Pacific Railroad and runs back a depth of 210 feet. This property is bound on its south side by the right of way of McArthur Drive and is therefore much more valuable for industrial purposes than the Key Property.

"Considering again the testimony of plaintiff's witness, Mr. Webb, we find he stated that this portion of the Moss property with which we are concerned, is presently worth $15,000.00 per acre for industrial purposes. Defendant's expert witnesses, Mr. W. P. Aertker and Mr. E. M. Ellington, both estimated the value of $21,000.00 per acre and defendant's expert witness, Mr. Rollo Lawrence, estimated it at $25,-000.00 per acre. Taking into consideration all of these expert opinions we reach an average of $20,500.00 per acre."

■ From a study of the record, we find that a value of $20,500 per acre is fair and just for that portion of Miss Moss' property actually taken. While it is slightly higher than the $20,000 per acre which plaintiff urges is the top amount which should be paid, we are not prone to disturb the findings of the trial judge, supra, when he has committed no manifest error. Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367; Smith v. Westchester Fire Insurance Company of New York, 227 La. 812, 80 So.2d 418.

With respect to severance damages for the diminution to the value of the Moss property by the construction of the proposed ditch, the arguments of plaintiff and Miss Moss are the same as were advanced

relative to the Key property. Counsel for Miss Moss strenuously urges that because of the vital location of her property she should be awarded the difference between the value of her property before the taking ($20,500) and the value after the construction of the proposed ditch (which he alleges to be $6,875).

■ Our answer to the above contentions is the same as that given to the arguments advanced by the Keys—that is, that the property should remain industrial and that as such it has suffered a diminution of $4,000 per acre. We agree with the trial judge that:

"* * * As to the diminution in value of the remainder of that part of the Moss property in question, that is fronting 264.08' on the railroad right of way by a depth of 210', we find that Miss Moss also argues that the proposed canal will cut off her property from access to the railroad and thereby destroy all industrial value, leaving the frontage on McArthur Drive usable only for commercial purposes and valued at $7,500.00 per acre.

"However, as was stated above, all of the experts who testified agree that if a culvert for a spur track was constructed over the proposed canal the property would still be useful for in-dustrial purposes, but according to Mr. Aertker there would be a loss of value of $4,000.00 per acre simply by reason of the canal being dug."

■ Since defendants have only been awarded severance damages for the diminished value of their lands, and we hold, supra, that the property should and can remain industrial if culverts are constructed, a prayer for the cost of constructing culverts does not exclude a cost for severance damages. This could only be true if the nature of the property were changed and defendants received the difference between the original market value and the residual value of the property with a changed nature.

On appeal plaintiff urges that defendants should not be awarded the cost of the construction of the culverts, because at the time of the institution of this suit a small ditch lay between defendants' property and the Missouri Pacific Railroad tracks.

The experts who testified were all aware of the presence of this small ditch, and their testimony took into consideration its existence.

Defendants contend that if their property is to have industrial use, more than one culvert for a spur track is needed to make it accessible to the railroad and the adjoining Sterkx Road.

▮ Testimony in the record shows that more than one culvert may be needed for the industrial use of defendants' property; but, since defendants have received the value of the property actually taken, plus severance damages for the diminished value of the remainder of the acre, we believe that an award for one culvert adjoining each property is fair and equitable.

▮ The judgments of the trial court did not mention that defendants were entitled to interest from judicial demand until paid. We believe that this was an omission on the part of the trial court, because, under Article I, sec. 2, Louisiana Constitution of 1921,[3] "just and adequate compensation" means that compensation in a matter such as this shall bear interest from the time it is due. Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612; Makofsky v. Department of Highways, 205 La. 1029, 18 So.2d 605.

For the reasons assigned, the judgments of the trial court are affirmed and amended so as to allow interest from judicial demand until paid. All costs are to be paid by plaintiff.

FOURNET, C. J., absent.

3. " * * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged ex-

cept for public purposes and after just and adequate compensation is paid."