184 So.2d 783 (1966)
STATE of Louisiana, Through the SABINE RIVER AUTHORITY, State of Louisiana, Plaintiff and Appellant,
v.
Jackson Edward SALTER et al., Defendant and Appellee.
No. 1680.
Court of Appeal of Louisiana, Third Circuit.
March 22, 1966.
Rehearing Denied April 19, 1966.
*784 Wood & Jackson, by W. R. Jackson, Jr., Leesville, and E. L. Edwards, Jr., Many, for plaintiff-appellant.
Taylor, Porter, Brooks, Fuller & Phillips, by Tom F. Phillips, Baton Rouge, and R. J. Reuel Boone, Many, for defendant-appellee.
Before TATE, FRUGE, SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a companion case to State of Louisiana, Through the Sabine River Authority *785 v. Miller, 184 So.2d 780. These expropriation cases were tried separately but consolidated for argument on appeal, because of a similarity of issues. Plaintiff is the Sabine River Authority, State of Louisiana, an agency created under LSA-Const. Art. 14, Sec. 45 for the purpose of controlling and utilizing the waters of the Sabine River and its tributaries for recreation, irrigation, industry, etc. The defendant is Jackson Edward Salter, owner of the approximately 80 acres of pasture land in Sabine Parish hereby expropriated. Defendant's property is part of a large area which will be inundated by the Toleda Bend Dam and Reservoir Project. All land and improvements are being taken but all mineral rights are reserved to defendant in perpetuity, as provided by the said constitutional section. Before filing suit, plaintiff offered, and defendant refused, the sum of $6,320 as just and adequate compensation. The district judge awarded defendant a total of $11,359. From this judgment, the plaintiff appealed, contending the award is excessive. Defendant answered the appeal, seeking an increase in the award.
The issues on appeal are: (1) the market value of the land expropriated; (2) whether defendant can recover for damages to the mineral rights reserved, caused by inundation of the property and certain restrictions by the Authority on the use of these minerals; (3) the amount allowable for damage to the mineral rights reserved, if recoverable; (4) were the fees allowed to the landowner's expert appraiser excessive; and (5) whether interest is allowable from the date the expropriation suit was filed or from the date the judgment of taking was signed.
Applicable here are the following general rules of law. The measure of compensation to be awarded in expropriation cases is the market value of the property, i. e., the price that would be paid in a voluntary sale between a willing seller and a willing buyer. Louisiana Power & Light Co. v. Simmons, 229 La. 165, 85 So.2d 251; Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541. In determining market value, the courts consider the most profitable use to which the land can be put. City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445 and authorities cited therein. Sales of similar property in the vicinity are the best evidence of market value. Caddo Parish School Board v. Bland, 228 La. 393, 82 So.2d 687.
The subject property contains 80.88 acres and is rectangular in shape. It is fairly level, well drained, cleared of all timber, fenced and has been seeded and fertilized for several years as an improved pasture. The soil type is described as "sandy loam to a silt loam", i. e., not as stiff as swamp land but not as sandy as crop land. Improvements on the property are a fence, two watering ponds, a corral, a cattle chute, and a calf feeder. The property is in a rural area and is located about one-quarter of a mile from the nearest public graveled road. It is accessible only by a private partially graveled road across an adjoining tract. The highest and best use of the property is the grazing of cattle, for which it is well suited.
Only two expert appraisers testified. Both based their appraisals on recent sales of comparable property and made certain adjustments for variations. We see no need to discuss these comparables in detail. The trial judge has done this in a very thorough written opinion, with which we agree. Plaintiff's appraiser, Mr. Everett Stephens, based his testimony largely on 3 comparable sales. After making certain adjustments for variations in the nature and location of the property, and the dates of the respective sales, Mr. Stephens' first comparable gave a value of $88.77 to the subject property, his second a value of $108.42 and his third a value of $120.61. Based on these comparables Mr. Stephens appraised defendant's property at $110 per acre, including the minerals which he appraised at 10% of the total or $11 per acre.
*786 Defendant's expert appraiser, Mr. Forrest K. White, relied principally on 5 comparable sales which the trial judge found, and we agree, are generally more similar to the subject property than the comparables used by Mr. Stephens. Based on these comparable sales, Mr. White appraised the subject property at $150 per acre, exclusive of the minerals.
A fact particularly noted by the trial judge is the increase in land values in Sabine Parish during the last 4 or 5 years. Large increases in the amount of severance taxes paid for oil and gas production, the amount of sales taxes paid and increases in bank deposits show an increase in business activity and money in the area. Also, most of the property in the parish is owned by a few large timber companies and this fact, together with the fact that a large amount of acreage is being taken by the Sabine River Authority, has caused a great demand for property.
Under all of the evidence, the lower court found that the market value of the property as a whole, including the value of the mineral rights, which is discussed in more detail herein, is $125 per acre, making a total value of $10,110. The improvements, which are not in dispute, are valued at $880 and added to this amount. These conclusions by our able brother below are clearly supported by the evidence and are within the range of the discretion of the trial court in matters of this type.
The next issue is whether the landowner is entitled to damages to his perpetual mineral rights caused by this expropriation. Although all mineral rights are reserved to the landowner in perpetuity, as provided by the above cited constitutional section, these rights will be subject to the following very onerous conditions: (1) The land will be flooded by deep water; and (2) the constitution provides that the exploration and development of such mineral rights "shall not endanger or impair properties and facilities of the Authority."
It is the contention of the landowner that because of oil and gas activity in the area, his mineral rights have a present market value for leasing; that as a result of the inundation of the land by deep water, and the other restrictions on the use of the reserved minerals, this present market value will be completely lost; that he is therefore entitled to damages for the loss of this present value of his minerals.
On the other hand, the River Authority contends the value of these mineral rights is too speculative to permit the award of damages therefor in an expropriation proceeding.
As the trial judge points out in his written opinion, there is as yet no case from our appellate courts deciding whether the mineral rights reserved in perpetuity to the landowner, under the provisions of LSA-Const. Art. 14, Sec. 45, constitute a separate mineral estate or simply a perpetual servitude. We think our brother below correctly concluded that these mineral rights, although reserved in perpetuity under the special constitutional provisions, must be treated as having the same status in our law as other mineral reservations, except that they are not subject to the general laws for the prescription of servitudes.
In this case we are concerned only with oil and gas, since this is the only mineral right for which damages are sought. The legal status of oil and gas in place, and the effect of a sale or reservation thereof, are set forth in Hodges v. Long-Bell Petroleum Company, 240 La. 198, 121 So.2d 831 (1960) as follows:
"Under the law of this state oil and gas in place are not subject to absolute ownership as specific things apart from the soil of which they form a part; or, as has been stated, there can be no mineral estate in oil and gas as such. Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207; Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782, and authorities there cited.

*787 A sale or reservation of minerals is a sale or reservation of a real right or a servitude, and carries with it the grant or retention of the right to go on the land for exploration for or exploitation of the minerals. Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846; Deas v. Lane, 202 La. 933, 13 So.2d 270; Long-Bell Petroleum Co. v. Tritico, supra; Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73."
It is our conclusion the mineral rights to oil and gas, reserved to Mr. Salter in perpetuity, are in the nature of a servitude.
The River Authority contends that since only a servitude, rather than ownership of the minerals in place, is reserved, the value of the servitude in this case is too speculative to permit an award for damages thereto in an expropriation proceedings. As we understand plaintiff's argument, it concedes that if oil or gas were presently being produced on the land, damages would be allowable. But, since there is no production on the land, and the nearest wells are several miles away, plaintiff contends the present value of the mineral servitude is too speculative.
The damages sought are in the nature of severance damages to remaining property not taken. As a general rule, the measure of severance damages is the difference between the market value of the remaining property before and after the taking. Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260. In the present case, the remaining property, not taken, consists of the mineral rights. The measure of damages is the difference between the market value of these mineral rights before and after the taking.
On the issue of the value of the mineral rights and damages thereto, it was stipulated that the court could consider the evidence introduced in the case of State of Louisiana, Etc. v. Elden Dees, No. 10767 on the docket of the United States District Court for the Western District of Louisiana, Shreveport Division, as applicable to the mineral rights involved here. The testimony of geologists, petroleum engineers, drillers and operators in that case shows clearly that the mineral rights reserved have a present market value for leasing and that this present value will be destroyed as a result of these expropriation proceedings. These experts explained that oil and gas production in Sabine Parish is from an impervious chalk formation, rather than from porous oil sands. The oil is located in fractures and fissures in the chalk formation. The wells are shallow and production is relatively small from each well. The experts all agreed that the great cost of barges and other equipment would render the drilling or production of such wells, over deep water, economically infeasible. Some of these experts also mentioned the additional cost which might be required to produce oil under restrictions which the Authority could impose to keep the waters of the reservoir free of waste oil and other residue.
These same oil and gas experts testified that at the present time leases in Sabine Parish are being purchased for as much as $100 an acre, depending on the location of the property. Mr. Ravel Montcalm, a geologist with much experience in Sabine Parish, testified that on the present market the subject property could be leased for $10 an acre, with a 3-year term and a 1/8th royalty. Plaintiff's own appraiser in this suit, Mr. Everett Stephens, testified in effect that the mineral rights under the subject property have a present market value of $11 per acre. He deducted 10% of the value of the land as a whole, as representing the value of the minerals.
We conclude the mineral rights reserved have a present market value and this value will be totally destroyed as a result of this expropriation.
The method used by the trial judge was to determine the value of the land as a whole, *788 including the contributory value of the minerals, and then conclude that since the mineral rights reserved will now have no value, the full value of the land as a whole must be awarded. The trial judge points out that somewhat the same procedure was used by our Supreme Court in Louisiana Power & Light Co. v. Simmons, 229 La. 165, 85 So.2d 251, where plaintiff took a servitude for a high voltage line through potential residential property, but reserved to defendant the restricted use of the property. Since no buildings could ever be built on the servitude, the court held that "for all practical purposes there is no difference between the value of the servitude and the value of the fee." Hence the court awarded the full value of the fee as compensation for the servitude.
Using this method, the trial judge noted particularly the evidence in the Elden Dees case, and the testimony of plaintiff's own appraiser, Mr. Stephens, in this case, to the effect that the minerals have a value of $11 per acre, concluded the value of the land as a whole is $125 per acre, and awarded this amount for the land taken and the mineral value destroyed. Although we prefer the severance damage method, the result reached in this case is the same under either procedure. The evidence clearly supports a market value of $11 per acre for the mineral rights before the taking and no market value after the taking. Hence, as a practical matter, it is immaterial here whether the damages are measured by the amount the now worthless minerals contributed to the value of the property as a whole, or by the market value of the mineral rights before and after the taking. The result is the same by either measure. The damage to the remaining mineral mineral rights not taken is $11 per acre.
The next issue concerns the fee awarded defendant's expert appraiser, Mr. Forrest K. White. The district judge allowed this expert $100 a day, for 3 days, plus travel expense, for a total of $369. The River Authority argues the fee should be no more than the $50 per day which it pays its own appraisers. This is a matter as to which the trial judge has great discretion. The record shows Mr. White is highly qualified by training and experience and that he prepared a very thorough appraisal in this case. We find no abuse of the trial judge's discretion as to the amount of this fee.
The final issue is whether interest is due from the date of judicial demand, i.e., the date suit was filed, or from the date the judgment was signed. The problem is not without difficulty. In Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612 (1942), plaintiff sued for impairment of the value of his property caused by the construction of a bridge approach in front of it. The court noted the jurisprudence that the state and its agencies cannot be required to pay interest unless a specific statute so provides. But it held that Sec. 2, Art. 1 of our Constitution, providing for "just and adequate compensation" for property taken or damaged for public purposes, and Art. 1938 of our Civil Code, providing for interest from the time a debt becomes due, are statutory authority for payment of interest from the date Harrison filed suit. The court particularly noted that this was not a tort action but a suit for damages to property for public purposes.
In Makofsky v. Department of Highways, 205 La. 1029, 18 So.2d 605 (1944), plaintiff sued a state agency for breach of contract. The court held interest was not allowable, stating the general rule that the state and its agencies cannot be compelled to pay interest, unless such is provided by statute. But the court noted:
"The only exception to this rule is where property is taken or damaged for public purposes. Westwego Canal & T. Co. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389; and Harrison v. Louisiana *789 Highway Commission, 202 La. 345, 346, 11 So.2d 612."
In the Westwego Canal & Terminal Co. case, cited by the Supreme Court above, the landowner sued for the value of its land taken by appropriation. After final judgment awarding interest from "judicial demand", the defendant sought by rule to change the interest to run from date of judgment. The court held the prior judgment was res judicata on the question, regardless of its merits.
The Harrison case and the Westwego Canal & Terminal Co. case were both brought by the landowner for compensation for property taken or damaged for public purposes, and could possibly be distinguished from the present case on that grounds. But then came Gravity Drainage District No. 1 of Rapides Parish v. Key, 234 La. 201, 99 So.2d 82 (1958), a suit, like the present, brought by the expropriating authority to take property for public purposes, under the general expropriation law. The court there held:
"The judgments of the trial court did not mention that defendants were entitled to interest from judicial demand until paid. We believe that this was an omission on the part of the trial court, because, under Article I, sec. 2, Louisiana Constitution of 1921, `just and adequate compensation' means that compensation in a matter such as this shall bear interest from the time it is due. Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612; Makofsky v. Department of Highways, 205 La. 1029, 18 So.2d 605."
The Gravity Drainage District case is the last expression of our Supreme Court on the question and is controlling here. Hence interest must be awarded from the date of judicial demand, i. e., the date suit was filed. Of interest is the rationale, for such a holding found in the comment. ExpropriationA Survey of Louisiana Law, 18 La.L.R. 509 at 555-556 as follows:
"In an expropriation suit the owner is subject to expenses and deprivations other than those heretofore mentioned. It appears that upon notice that his property is sought by a taker, the owner is restricted in his use of his property. Any improvements he erects after knowledge that his property is to be taken may be excluded from consideration in the award. If the taker is acquiring the property because of certain special attributes it possesses the owner may be enjoined from altering them. In order to satisfy constitutional requirements, interest must therefor be paid on the award. The point at which interest starts to run in the situations of a formal expropriation suit and a constitutional damaging is the date when judicial demand is made in the suit in which the award is made. There is some authority to the effect that in the St. Julien situation interest runs from the date of occupancy, but it too seems to be subject to the judicial demand rule."
The principal case relied on by the Authority is A. K. Roy, Inc. v. Board of Commissioners, 238 La. 926, 117 So.2d 60. But the Roy case is readily distinguishable from the present matter in that there the defendant had taken plaintiff's property by appropriation, as distinguished from expropriation, several years before Roy filed suit for compensation. The court held that under the circumstances interest must be computed from the time of the taking, which was the time the debt became due, rather than from the time of filing suit years later.
For the reasons assigned, the judgment appealed is amended so as to require the payment of interest from judicial demand, i. e., the date suit was filed, until paid. Except as herein amended, the judgment is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.