CULPEPPER, Judge.
This is a companion case to “State of Louisiana, Through the Sabine River Authority, State of Louisiana v. Jackson Edward Salter”, 184 So.2d 783, in which a separate opinion is being rendered by us this date. These expropriation cases were tried separately in the District Court, but were consolidated for argument on appeal because of similarity of issues.
In the present suit, the Sabine River Authority seeks to expropriate an approximately 80 acre farm owned by the defendant, Jordan G. Miller, and located in a rural area in Sabine Parish. The district judge awarded defendant $11,618.69 as full compensation for the land, together with all timber and improvements situated thereon, and the sum of $1,204.80 as severance damages to the mineral rights reserved to the defendant in perpetuity. From this judgment plaintiff appealed, contending the award is excessive. Defendant answered the appeal, seeking an increase in the award.
The issues on appeal are: (1) the amount of compensation for the land expropriated, including timber and improvements; (2) whether defendant can recover for severance damages to the mineral rights reserved, caused by the inundation of the property and certain restrictions by the authority on the use of these minerals; (3) the amount allowable for severance damage to the mineral rights reserved, if recoverable; (4) the amount of the fees allowed for the landowner’s expert appraisers; and (5) whether interest is allowable from the date the expropriation suit was filed, or from the date the judgment of taking was signed.
We will first discuss the amount of compensation awarded for the property expropriated. The general rules of law by which to measure the amount of compensation are set forth in the said companion case, hereinafter referred to as the Salter case. The property herein expropriated consists of 80.32 acres, rectangular in shape, and traversed by an all-weather graveled road which connects with a blacktopped road about 2 miles away. The defendant, an 80 year old colored man, has lived on this farm for many years. Improvements consist of a very modest residence, smokehouse, shed, crib, chicken house, barn, etc. which the trial judge found to have a value of $3,253.60. About 4 acres is used for the home site, 14 acres for crop land, 24 acres for pasture and 38 acres for timberland. The land’s highest and best use is for a rural farm. The property is unique in that it is supplied with water by an artesian well.
Expert real estate appraisers and foresters testified for both the plaintiff and the defendant. The realtors used the comparable sales approach in evaluating' the property, each making certain adjustments for variations in the nature and location of the properties and the dates of respective sales. '
We see no need to discuss in detail the testimony of the various experts or the comparable sales used by them. The district judge has done this in a very thorough and able written opinion, in which he discusses at length the testimony of the various real estate and timber experts and evaluates their conclusions as to good reasoning and sincerity.
Briefly, the opinions of these experts are as follows: Mr. Everett J. Stephens, an expert real estate appraiser for the plaintiff, concluded the market value of the land, excluding improvements and merchantable timber, is $80 per acre. From this, he deducted 10% for the value of the mineral rights, leaving an appraisal of $72 per acre for the land. Mr. Will S. Holmes, another expert realtor for the plaintiff, appraised the approximately 3 acres of home site at *782 $125 per acre, the 14 acres of crop land at $110, 23.32 acres of open pasture at $82 per acre and 40 acres of timberland at $45 per acre. Mr. Holmes thus found the average value of the land to be about $70 per acre, excluding the minerals, improvements and merchantable timber.
Mr. Forest K. White, an expert witness for the defendant, evaluated the 4 acres of home site at $175 per acre, 7 acres presently in the soil bank for corn at $155 per acre, 31 acres of pasture land at $135 per acre and 38 acres of timberland at $95 per acre. Thus he found an average evaluation of about $125 per acre, excluding improvements, merchantable timber and minerals.
Mr. George Black, also an expert witness for the defendant, evaluated the approximately 40 acres of woodland at $70 per acre and the approximately 40 acres of open land at $151 per acre. He noted particularly that the home site, pasture land, crop land and timberland would be more valuable as a part of one farm unit than they would be separately. He found an average evaluation of about $110 per acre, excluding the improvements, merchantable timber and minerals.
The trial judge in this case, as in the Salter case, noted particularly the great improvement in economic conditions in general, and the demand for land in particular, in Sabine Parish within the last few years. He then reached the following conclusions, which are fully supported by the evidence and are well within the range of the discretion of the trial judge in cases of this type:
“Taking all of the evidence into consideration and giving reasonable effect to the testimony of each of the expert witnesses, it is my opinion that the fair market value of defendant’s farm unit, less and except improvements, merchantable timber, and oil, gas and other mineral rights, is $8,032.00, or $100.00 per acre. This value is based upon- the conclusion that the evidence reasonably shows that the different portions of the defendant’s farm unit contribute to the. market value thereof in approximately the following proportions:
“4 acres used as a homesite, at $130.00 per acre; 14 acres of cropland valued at $125.00 per acre; 24 acres of unimproved and semi-open pasture land, without distinction, valued at $105.00 per acre; and 38.32 acres of timber land, valued at $85.00 per acre.
“Mr. Holmes valued defendant’s improvements at $3,253.60. An examination of the approach made by Mr. Holmes in reaching his evaluation of the improvements on defendant’s property appears to have been quite reasonable. For that reason, I am accepting his evaluation of defendant’s improvements.
“Mr. Snyder, defendant’s timber appraiser, made a one hundred per cent tree count; and while his estimate of the merchantable timber is lower than that of either Mr. Thiels, plaintiff’s timber appraiser, or Mr. Lewis Peters, defendant’s timber appraiser, it is my opinion that his appraisal of $333.09 for the merchantable timber should be accepted.”
“Therefore, it is my opinion that defendant’s property, less the oil, gas and other mineral rights, has a market value of $11,618.69, itemized as follows: 80.32 acres of land, $8,032.00; contributory value of the timber $333.09, and contributory value of improvements, $3,253.-60.”
The next issue concerns defendant’s claim for severance damages caused by this expropriation to the mineral rights reserved to him in perpetuity. For the reasons set forth in our opinion in the Salter case, it is our conclusion that the reservation of mineral rights in perpetuity, under the provisions of LSA-Const. Art. 14, Sec. 45, is in the nature of a mineral servitude, except that it is not subject to the general laws for the prescription of servitudes. We are further of the *783 opinion that the defendant landowner is entitled to any severance damages caused by this expropriation to these mineral rights. The measure of this severance damage, as in the Salter case, is the difference in market value of these mineral rights before and after the taking.
As in the Salter case, it was stipulated that the evidence in the case of State of La. Through the Sabine River Authority v. Elden Dees, et al., No. 10767, on the docket of the United States District Court for the Western District of Louisiana, Shreveport Division, should be considered by the court in the present case as applicable to the mineral rights. A discussion of this evidence will be found in our opinion in the Salter case.
Under this evidence, the district judge found that the severance damages to the mineral rights in the present case amount to $15 per acre. This compares with $11 per acre which was allowed by the district judge in the Salter case. But, it is our opinion that the difference here is very narrow and is within the range of the discretion of the trial judges.
Essentially, the same arguments are made in this case as were made in the Salter case with regard to the fees allowed the landowner’s expert appraisers. For the reasons expressed in our opinion in the Salter case, we find no abuse of the trial court’s discretion in this regard.
Also, as regards the question of whether interest is allowable from the date of judicial demand, i. e., the date suit was filed, or from the date the judgment was signed, the arguments in this case are the same as in the Salter case. For the reasons which are fully set forth in our opinion in the Salter case, it is our conclusion that interest should have been allowed from the date of judicial demand, i. e., the date this suit was filed. Accordingly, the trial court judgment must' be amended in this respect.
For reasons assigned, the judgment appealed is amended so as to allow interest from the date of judicial demand, i. e., the date suit was filed. Otherwise than as herein amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.