ELLIS, Judge.
On November 25, 1957, suit was filed by the plaintiff herein to expropriate the defendant’s property located at the corner of Laurel and North Tenth Street in the City of Baton Rouge. The property fronts 60 feet on Laurel Street by a depth of 85 feet on North Tenth Street. The state appraisers appraised the value of the subject property at $15,500.00. This included $15,-000.00 for the land itself, and $500.00 for the improvements thereon. The plaintiff deposited this sum in the court and an order of expropriation was signed ordering the defendant to vacate the property and surrender the possession thereof to the plaintiff not later than thirty days, after being served with notice of the suit.
After withdrawing the deposited sum from the registry of the court,, an answer was duly filed on December 19, 1957, seeking an increase for the compensation to the sum of $26,500.00, together with legal interest at the rate of 5% thereon on all amounts above $15,500.00. A trial was had on the merits, and for the oral reasons assigned, judgment was rendered fixing the market value of the property expropriated to be $22,250.00 which included $21,000 for land and $1,250.00 for improvements which was an increase of $6,750.00 over the amount deposited into the registry of the court. The court also allowed special damages as expenses incurred in the employment of two real estate experts in the sum of $700 and $50 each was taxed as costs for the expert witness fee for testifying in court one day each. Both plaintiffs and defendants appealed from this judgment.
There are but two questions to be decided on this appeal:
1. The fair market value of the property;
2. Whether appraisers for the defendant and owner in an expropriation suit are to be taxed as costs or assessed as damages.
The District Court based its judgment upon testimony as to values of com-parables which was correct under law established in the cases of Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491; Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36.
After a careful analysis of the record, we find that the trial court has correctly used as comparable sales the Pecoraro, Collier and Polito properties, as a basis for his judgment, and we quote from his reasons therefor. *737 vention Street, and of course the difference in it and Florida Street. It is for that reason chiefly that I am going to limit my findings to the three comparables on Laurel Street. If you have sales right about the same time of property in the immediate neighborhood, I see no reason to go several blocks away and consider other sales. The three comparables that I refer to, of course, are the Pecoraro property, which was actually sold after the taking in this case but which is, based on the testimony of Mr. Munson, a sale that had its origin shortly after the time of this taking and I think is entitled to be considered a comparable; the second one is the sale to Collier, and the third is the sale to Polito. You have there one sale two blocks east of the subject property; a sale in the middle of the block next east of the subject property and then a sale two blocks west of the subject property. You have the advantage, then, of the difference in values as you go further west or as you go further east.”
*736 “In my opinion this case can be decided on three comparables. The evidence convinces me, and I think will convince anybody that heard it or that reads it, that Laurel Street stands by itself as to values of property fronting on it. There has been testimony that shows the difference in it and Main Street; the difference in it and Con- *737 property does not have that defect. The improvements on that property sold to Polito sold for $9,500 and Mr. Rose-man, the State’s witness, valued those improvements at $2,000 leaving a front foot value for the land of $250. Whether that is all correct or not is not of any great importance as far as I am concerned. So there you have two blocks further east an admitted front foot value of $300. You have then on an insider narrow lot an admitted front foot value of $250. You have two blocks further west a front foot value of $400 plus. I am of the opinion that considering those three comparables the subject property had at the date of the taking a front foot value of $350 and I am going to so hold in this case.”
“The Pecoraro sale was for a total consideration of $31,000.00. I do not think there is any evidence in the record that shows with any degree of certainty the value of the improvements on that property at the date of the sale, but if you give the improvements as high a value as $3500 or 2500 you arrive at a front foot value of around $400. It is true that the property is five feet greater in depth, I believe, than the subject property, but I am unable to see that that is of any importance. You go east two blocks to the Collier property and you had a sale price of $12,500 for a frontage of thirty feet, running back 130 feet. You have a little greater depth there than you do in the subject property. You also have, according to all the testimony, a somewhat less desirable location because it is immediately across Laurel Street from the school playgrounds and the subject
 The appraiser for the State, Mr. Lowell E. Roseman, used as comparables several tracts that were located some distance away from the subject property. We cannot say the lower court erred in rej ecting these as comparables. Likewise, the rejection by the lower court of several of the comparables used as the basis of defendant’s experts appraiser was also correct since too many allowances and adjustments would be necessary in order to compare them to the subject property. The lower court accepted as comparables properties that were used by both plaintiffs and defendants’ experts in finding the value of the property at $21,000.00, without the improvements.
We turn next to the fixing of the value of the improvements on this particular tract. The plaintiffs assigned a value of $500.00 for the improvements and the evidence showed that this is what was actually paid to the State for the improvements. The evidence in the record does show, however, that this was a forced sale and that had a prudent real estate broker handled the property and moved the house to a location where he could have held it for several months, a sum as fixed by the *738 lower court could have easily been obtained, namely, $1,250.00.
In support of this price the record shows that defendant’s experts had sold houses of this type for as much as $2,250.00, some for $1500, and some for $1250.00. We cannot say that the lower court was in error in fixing the lowest sum that had been obtained for houses of similar construction sold under similar conditions by the defendant’s expert, Mr. Munson (See p. 82 Transcript).
The remaining issue in this case is whether the charges of the real estate appraisers to support defendant’s demands that the state had not paid the full fair market value of the expropriated property should be taxed as costs or as damages.
The plaintiff argues that this should be taxed as costs under the authority of LSA-Code of Civil Procedure, Article 1920, which we quote as follows, to-wit:
“Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as other wise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.”
We find the language in the Westwego Canal & T. Co. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389, particularly applicable to the issue at bar, and quote therefrom as follows: age, although it may be conceded that the statutes as to costs involved in civil actions do not apply. See 20 C.J., § 507, p. 1133; 30 C.J.S. Eminent Domain § 381. One of the cases cited in support of this proposition is Petersburg School Dist. v. Peterson, 14 N.D. 344, 351, 103 N.W. 756, 759, in which the reason for the rule is stated as follows: ‘To hold that the owner must pay his own costs in resisting attempts to take his land against his consent, without first paying adequate and just compensation therefor, would nullify to a certain extent this constitutional guaranty, and result in giving him less than just compensation for his property. The constitutional provision means that he shall receive just compensation for his property, and not that the just compensation assessed by a jury shall be diminished to the extent of his costs. The provision was designed for the benefit of the landowner, and should be construed so as to give him its benefit to the full extent.’ ” (Emphasis added.)
“To give to Act 135 of 1936 the effect presently contended for by the attorneys for the Highway Commission would make it unconstitutional, because it is provided in Section 2 of Article 1 of the Constitution of 1921 that private property can not be taken or damaged for public purposes without just and adequate compensation to be paid therefor. This constitutional provision clearly contemplates that the class of expenses usually taxed as costs should be included as an element of the owner’s dam-
The judgment in the above cited case awarded as additional expenses the sum of $228.83 which was composed of Court costs, $33.67; expert fees and expenses of Frank H. Widdill, $191.80; costs of blue prints, $3.36 “together with interest on said amount at the rate of five per cent per annum from Judicial demand, December 23, 1932, to the date of filing the rule, May 22, 1939” which interest the Supreme Court stated amounted to $64.08.
In State Through Dept. of Highways v. Barineau, 225 La. 340, 72 So.2d 868, at page 872, the Supreme Court of Louisiana, in considering the precise question now before this Court, stated:
“Although the lower court rendered the proper judgment, the statement contained in the Court’s ‘Reasons’ is incorrect, since the general rule that the State and its polical subdivisions, public boards or commissions are exempt from payment of court costs except ‘stenographers’ costs for taking testimony’, LSA-R.S. 13:4521, does not apply in expropriation proceedings. In *739 these, the State is liable for costs, unless tender of the true value of the land has been made before proceeding to a forced expropriation, in which case ‘the costs of such proceedings shall be paid by the owner’, LSA-Civil Code, Art. 2638; LSA-R.S. 19:12; Louisiana Hwy. Comm. v. Bullis, 197 La. 14, 200 So. 805; American T. & Tel. Co. v. Maguire, 219 La. 740, 54 So.2d 4. To hold that the owner must pay his own costs in resisting attempts to take his land without his consent would nullify to a certain extent the constitutional guarantee of just and adequate compensation, Art. 1, Sec. 2, La.Const. of 1921, which ‘clearly contemplates that the class of expenses usually taxed as costs should be included as an element of the owner’s damage * * *.’ Westwego Canal & Term. Co. v. Louisiana Highway Comm., 200 La. 990, 9 So.2d 389, 392; see, also, Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612; Gulf Shipside Storage Corp. v. Thames, 217 La. 128, 46 So.2d 62.”
In the case of East Baton Rouge Parish School Board v. Ford, La.App., 76 So.2d 20, we used the following reasons given in the Westwego Canal Company case, supra, to allow a defendant to recover his expert appraisers costs, which we quote :
“To hold that the owner must pay his own costs in resisting attempts to take his land against his consent, without first paying adequate and just compensation therefor, would nullify to a certain extent this constitutional guaranty, and result in giving him less than just compensation for his property. The constitutional provision means that he shall receive just compensation for his property, and not that the just compensation assessed by a jury shall be diminished to the extent of his costs. The provision was designed for the benefit of the landowner, and should be construed so as to give him its benefit to the full extent.”
“It cannot have been the purpose of the framers of the constitution that a person compelled to surrender his property for public uses shall have any less as compensation therefor than a full equivalent measured by all reasonable rules. That must include all necessary expenses incurred by him in the enforcement of his rights, which are taxable according to law. He must have in the end a full just compensation for his property. It must not be diminished by any costs reasonably incurred in condemnation proceedings, or in collecting the award, which are ordinarily taxable by the rules of law in favor of the prevailing party in an action or proceeding to make his judicial remedy effective. That is the true constitutional measure of his rights.”
In the East Baton Rouge Parish School Board v. Ford case, cited supra, we were not specifically called upon to pass upon the question of whether the expenses of the appraisers should be taxed as costs or damages. We did, however, rely on the pronouncements hereinabove quoted from the-Westwego Canal & T. Co. v. Louisiana Highway Commission, cited supra, which we find to be controlling on this issue. The expert appraisers’ charges were properly assessed as an item of damage.
For the reasons hereinabove given the judgment of the lower court is affirmed.
Affirmed