**LAKE CHARLES HARBOR AND TERMINAL DISTRICT**

v.

**Mrs. Josephine HENNING et al.**
**Civ. A. No. 11241.**

United States District Court
W. D. Louisiana,
Lake Charles Division.

Nov. 16, 1966.

Everett R. Scott, Jr., Lake Charles, La., for plaintiff.

James J. Cox, Lake Charles, La., for defendant.

HUNTER, District Judge:

Proceeding under the general expropriation laws of Louisiana,[1] plaintiff filed in State Court on June 23, 1965 this action to expropriate 26.62 acres of land in Calcasieu Parish. The suit was removed to this Court on the basis of diversity. The only issue is just compensation. Subsequent to submission of the case for decision, the Court has considered the pleadings, stipulations, exhibits, and testimony of the witnesses, and hereby makes and enters the following findings and conclusions:

## FINDINGS OF FACT

1. The Lake Charles Harbor and Terminal District is a political corporation possessing a corporate entity and is domiciled in Calcasieu Parish, Louisiana.

2. Defendants are residents and citizens of Texas.

3. Defendants are the owners of the 26.62 acres sought to be expropriated, the value of which is in excess of $10,000.

4. There is excepted and reserved from this taking all of the oil, gas and other minerals. These minerals are reserved to defendants in perpetuity.

5. Defendants offered testimony of two extremely well qualified experts as to the value of the land. These gentlemen are highly qualified and have made a sincere, conscientious, honest, and extremely detailed analysis of the comparables and conditions existing. Mr. Normand Terry valued the land at $8,250 per acre. Mr. Russell Avant valued it at $9,500 per acre. Neither made any distinction or adjustments to their comparables for minerals, but each testified they had appraised the estate taken, as if, as here, the minerals had been reserved in perpetuity.

6. Defendants also offered the testimony of Dr. Frank Counselman, a consulting geologist, who testified that the minerals underlying subject property, had a value of $125 per acre, and that this value would be destroyed by industrial use. Summing up the effects of his testimony, it is that if the property

1. Suit is also specifically authorized by LSA 34:206.

were used for its highest and best use (industrial), it would destroy the mineral value to the extent of $125 per acre.

7. Dr. Counselor emphasized that the highest and best use for industrial use necessarily contemplates the unavailability of the land as a drilling platform. The value as an industrial site far outweighs consideration of the property as a "wildcat" mineral prospect. No award is made for minerals in the context of this case.

8. Plaintiff offered the testimony of Mr. William Coleman and Mr. Leonard Pauley. Mr. Coleman and Mr. Pauley are highly qualified, competent and honest, and have made a sincere, conscientious and extremely detailed analysis of the comparables and conditions existing. Mr. Coleman and Mr. Pauley, being local appraisers, are perhaps more familiar with local market conditions than are Mr. Avant and Mr. Terry. Mr. Coleman valued the property at $3,700 per acre; Mr. Pauley valued the property at $3,500 per acre.

9. Both plaintiff and defendants introduced certified copies of all the market transactions relied on by the various appraisers, together with summaries and exhibits. These transactions vary greatly in their comparability but they are to be considered.

10. Giving due consideration to all factors, the Court concludes that an award of $5,970 per acre should be made.

## CONCLUSIONS OF LAW

1. The Court's jurisdiction is based on diversity of citizenship between the parties and requisite jurisdictional amount. 28 U.S.C.A. § 1332.

2. The measure of compensation to be awarded in an expropriation proceeding is the market value of the property taken—that is, the price that would be paid in a voluntary sale between a willing seller and a willing buyer. Louisiana Power and Light Co. v. Simmons, 229 La. 165, 85 So.2d 251.

3. In determining market value, the courts consider the most profitable use to which the land can be put. Sales of similar or comparable property in the vicinity are the best evidence of market value. Caddo Parish School Board v. Bland, 228 La. 393, 82 So.2d 687.

4. Here, as in most cases, opinions of experts are relevant, because sales on the market vary greatly in their comparability, and strictly speaking, no piece of land is identical to another. The opinions expressed by those tendered as experts here as to the value of the land are to be considered. United States v. 1040.30 Acres of Land, D.C., 144 F. Supp. 199.

5. In determining market value, each case must be considered in the light of its own facts, and every element that can fairly enter into the question of value and which an ordinarily prudent businessman would consider, before making a purchase, should be considered. 29A C.J.S. Eminent Domain, para. 136 (5), page 555.

6. In an expropriation suit the market value of the property must be determined at the date of the taking. United Gas Pipeline Co. v. Nezat, La. App., 136 So.2d 76; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914.

7. Several Louisiana Supreme Court cases are to the effect that legal interest is due in expropriation proceedings from the date of judicial demand. Weiss v. Board of Commissioners, 1959, 238 La. 419, 115 So.2d 804; Gravity Drainage District No. 1 of Rapides Parish v. Key, 1958, 234 La. 201, 99 So.2d 82. A later decision (A. K. Roy, Inc. v. Board of Commissioners, 1960, 238 La. 926, 117 So.2d 60) repudiates this view and finds that the authorities relied on in Weiss

did not support the erroneous conclusions reached there.[2]

■ 8. We hold that defendants' claim for interest on the judgment from the date the suit was filed until the date of judgment is not meritorious. Defendants were not divested of their land until the judgment of condemnation was entered and on that same day the full amount of the judgment was paid to prevent the running of interest. The judgment does not revert back to the date the suit was filed and there is nothing upon which interest could run until the judgment was entered. State of Louisiana, Through Anacoco-Prairie State Game and Fish Commission v. Kirby Lumber Corp., D.C., 188 F.Supp. 835, affirmed 5 Cir., 293 F.2d 82.

■ 9. The record reflects a stipulation that Lake Charles Harbor & Terminal District tendered to defendant landowners the sum of $72,250, subject to a credit of $31,018 for the entire interest in the estate sought to be taken. It is acknowledged, however, that the condemning authority should be cast for costs, should the judicial award exceed the quantum of the amount tendered, and that, of course, is what has happened in this case, so there can be no question but that plaintiff's expropriating authority is responsible for ordinary costs. However, because of the compromise agreement entered into by and between plaintiff and all defendants, in settlement of a prior proceeding in this Court, entitles plaintiff to a credit of $31,018, the compromise agreement itself; its own terms and stipulations are in evidence.

10. Defendants were offered $72,250 for their land by the expropriating authority, based on appraisals submitted by the authority's witnesses. After suit was filed herein the authority's own appraisers changed their appraisals from a maximum of $2,800 an acre to a maximum of $3,700 an acre. After hearing the evidence, the Court has determined the fair market value of the land to be $5,970 an acre. Under these circumstances, the Court must decide if reasonable expert fees are to be awarded as a part of just compensation.

## CONCLUSIONS OF LAW

■ Under the unique facts and circumstances of this case, the Court finds that defendants are entitled to the payment of reasonable fees of necessary expert witnesses in order that they may receive just compensation for their land. The Louisiana substantive law allows an award of expert fees in eminent domain proceedings to the land owners if they succeed in establishing a higher value for their land on trial. State Through Department of Highways v. Barineau, 225 La. 341, 72 So.2d 869. This substantive law of the state, in proper circumstances, must be applied in this Federal Court under the doctrine of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This case is distinguishable from Henkel v. Chicago, St. P. M. & O. Railway Co., 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386, for the reason that the equitable doctrine of just compensation was not involved in the Henkel case. The Court will award reasonable expert fees herein as a part of just compensation in accordance with the rationale in United States v. Lee, 360 F.2d 449 (5 Cir., 1966).

Judgment accordingly.

---

2. The Third Circuit Court of Appeals for Louisiana, at an en banc hearing, has distinguished the *Roy* case, and has held in no uncertain terms that interest on an expropriation award was to begin from the date suit was filed. State Sabine River Authority v. Salter, La.App., 184 So.2d 783; State Sabine River Authority v. Miller, La.App., 189 So.2d 603. The Supreme Court of Louisiana, on October 11, 1966, 190 So.2d 914, granted writs of certiorari on this specific problem in State Sabine River Authority v. Miller.