Mrs. Josephine H. HENNING et al., Appellants,

v.

LAKE CHARLES HARBOR AND TERMINAL DISTRICT, Appellee.

LAKE CHARLES HARBOR AND TERMINAL DISTRICT, Appellant,

v.

Mrs. Josephine H. HENNING et al., Appellees.

No. 24586.

United States Court of Appeals Fifth Circuit.

Jan. 4, 1968.

James J. Cox, of Scofield, Cox & Bergstedt, Lake Charles, La., for appellants Mrs. Josephine H. Henning and others.

Everett R. Scott, Jr. of Kaufman, Anderson, Leithead, Scott & Boudreau, and Fred H. Sievert, Jr. of Stockwell, St. Dizier, Sievert & Viccellio, Lake Charles, La., for appellee Lake Charles Harbor & Terminal District.

Before COLEMAN and GOLDBERG, Circuit Judges, and HANNAY, District Judge.

COLEMAN, Circuit Judge.

The Lake Charles Harbor and Terminal District was created in 1924 as a political subdivision of the State of Louisiana.[1] It has constructed, developed, maintained, and operated harbor and terminal facilities since its inception. In connection with these facilities, it has, from time to time, issued bonds and other indebtedness for capital improvement of the Port facilities.

In 1965 the District filed its suit in State Court to expropriate (condemn) 26.62 acres of land, the property of the appellants.[2] The owners, being nonresidents of Louisiana, removed the case to the United States District Court for the Western District of Louisiana. In vigorously contested proceedings which developed a record of 1700 pages, that Court ordered the lands expropriated and fixed just compensation, 260 F.Supp. 756 (1966).

The landowners appeal and the District has cross appealed.[3] The Judgment of the District Court will be vacated and remanded.

The landowner appellants challenge the constitutionality of the taking and the amount of compensation. The cross appellant complains that the compensation was excessive.

Quite logically, the hearing in the District Court was divided into two parts.

The first part, comprising 946 pages of the appellate record, considered the

---

1. La.Const., Art. 14, Sec. 31; La.R.S. 34:201 et seq.

2. The District alleged that it "is in the process of constructing an industrial canal and other appropriate facilities to be owned and operated by the District or leased by it to others for manufacturing commercial and business purposes to promote the industrial development of the Lake Charles Harbor and Terminal District, and in connection therewith proposes to construct an industrial plant facility known as a "coke" plant to be owned and operated by it or to be leased by it to others; that the best suited property for the improvements, to-wit, in-

dustrial canal and the coke plant, included the property of these defendants and that the proposed expropriation 'is for the public purpose and utility'."

3. The answer contested the validity of the taking, asserting that it is not for the public use or for private purposes and that there was no necessity for the taking.

The bond issue for the construction of the facilities involved in this litigation held constitutional, Wright v. Lake Charles Harbor and Terminal District, La.Ct.Apps., 1966, 188 So.2d 449; cert. denied, Sup.Ct.La., 1966, 249 La. 620, 188 So.2d 922.

question of the right to expropriate. The paramount issue was whether the District intended to use the lands for the construction of a coke plant as alleged in its petition. Such a coke plant was held to be for a public use by the Louisiana Court of Appeals in a companion case, Lake Charles Harbor & Terminal District v. Farquhar, 196 So.2d 847 (1967). The proof raised very strongly the likelihood that the lands would not, in fact, be used for the purpose alleged in the petition. There was much talk about a bulk storage plant of some, undefined nature. The record reveals that on the witness stand two officials of the Harbor Board declined to state who might use the storage tank (if that were the facility constructed) or what might be stored in it.

After hearing the evidence as to the use to which the lands were to be put, the Court stated:

> "I will write an opinion in this case and I will decide it [the right to take] along with the other [just compensation] * * * [I]t is true that if the Court were to hold that there was no power to take, then, of course, there is no use putting on any evidence about the value * * * but I am going on with the question of value tomorrow * * * I will give counsel full opportunity to argue this matter at length * * *".

The Judge then proceeded to dictate "my thoughts into the record". After further comment, he stated:

> "[T]hat brings us to the fundamental question in this facet of the case: Is the taking for the proposed facility within the accepted meaning of the word 'public use'? Well, my answer to that, from what I have heard, is in the affirmative * * * I think the paramount purpose is a public one * * * the private use that would be made of these facilities from the evidence, I would consider to be incidental".

The Court concluded these remarks by saying,

> "So, I think that this property can be taken, but now I might change my mind on that. I am not foreclosing that proposition".

The next day the trial proceeded on the question of just compensation and when that phase of the case was concluded the Court made its findings of fact and conclusion of law which have been published, as aforesaid, 260 F.Supp. 756. In those formal findings and conclusions the Court stated, *"the only issue is just compensation"*. The findings and conclusions as to the right to take were never finalized or formalized beyond the remarks of the Court dictated into the record and above excerpted.

This Court, therefore, is left without any specific findings or conclusions as to why the District Court was of the preliminary view that the taking was for a public use, and therefore permissible. We are not informed of the credibility choices or other factors considered as decisive of the question. The Court nowhere finds or adjudicates the use to which the lands are to be put.

■■ In this state of the record, we are driven to the conclusion that the judgment must be vacated and remanded for specific findings of fact and conclusions of law as to what use the land is to be put to and whether that use is public. In performing this function the District Court will be free, of course, to consider the record already developed as well as any further evidence which may be heard upon remand. Rule 52(a) Fed.Rules Civil Procedure; Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065.

■ Both sides appeal as to the amount of the compensation. The District relied on the testimony of two appraisers, one of whom valued the land at $3,700 per acre while the other valued it at $3,500 per acre. The landowners likewise offered two experts. One of them valued the land at $8,250 per acre and the other at $9,500 per acre. The District Court found, "Giving due consideration to all factors, the Court concludes

that an award of $5,975 per acre should be made". The factors are not enumerated or described. The parties attack the award as being the result of an "averaging" which is impermissible under both Louisiana law and the prior decisions of this Court. While it is true that the result very nearly approaches an average the District Court did not in its findings or conclusions indicate the use of such a method. We make no effort to read the Court's mind. Since the case must be remanded for further findings and conclusions as to the use of the lands sought to be expropriated we likewise remand for full findings and conclusions as to the factors upon which the Court computed compensation.

There was undisputed testimony from an expert witness (geologist) that the minerals underlying the subject property had a value of $125 acre and that this value would be destroyed by industrial use, the highest and best use for this property. The Court stated, "No award is made for minerals in the context of this case". It would appear, although it is not specifically so stated, that the compensation awarded for the property, for industrial use, included the value of the minerals. We leave this point for further clarification on remand.

Before filing suit for expropriation the Harbor District offered only $2,714 per acre for the subject land. This was the amount offered in the petition, although it later developed that the appraisers for the District had, in fact, appraised the land at a value higher than that offered. After the landowners had employed appraisers and attorneys to defend their property the appraisers for the District raised their appraisals by nearly a thousand dollars an acre. The landowners paid out $10,479.24 for consulting geologists, consulting engineers, and appraisers. The Court allowed $5,400 of this amount as being reasonable and "as part of just compensation in accordance with the rationale in United States v. Lee, 360 F.2d 449 (5 Cir., 1966)." The landowners here contend that they were entitled to reimbursement for the full amount expended, whereas the District says that they are entitled to no reimbursement whatsoever because under Louisiana law these fees can only be reimbursed as costs and expert witness fees cannot be recovered as costs in federal courts.

■ We see nothing in this record to indicate that the trial judge was clearly in error in fixing the reasonableness of the fees at $5,400 and the landowners' request for reversal on this point will be rejected. We likewise reject the contention of the District that because the litigation was removed to the federal courts no reimbursement can be made.

■ It is true that in State, Through Dept. of Highways v. Jones, 243 La. 719, 146 So.2d 414, the Supreme Court of Louisiana categorically stated that recovery of appraisal fees, under Louisiana law, is regarded as costs rather than damages. It is likewise true that this Court has held that United States District Courts have no authority to tax costs for compensation to expert witnesses in excess of the statutory attendance per day, mileage and subsistence allowance, Kirby Lumber Corp. v. Louisiana, 293 F.2d 82, 83 (1961); Green v. American Tobacco Co., 304 F.2d 70 (5 Cir. 1962). Nevertheless, Louisiana law, R.S. 13:3666 proves that "the fees and expenses of experts summoned and used by the successful litigant may be taxed as costs." This, it has been held by the Supreme Court of Louisiana, is necessary in order that the property owner may receive that just compensation required by the Constitution of Louisiana, State, Through Dept. of Highways v. Barineau, 225 La. 341, 72 So.2d 869 (1954). We accordingly hold that this reimbursement, by whatever name called or by whatever procedure handled in the state court system, is a substantive requirement of Louisiana law, a substantive right of the landowners, and binding upon this Court, Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We do not reach nor intimate any opinion as to what the rights of these property owners might be in this regard under the Fourteenth Amendment.

268

■ The landowners demand interest from the date of the petition for expropriation. The Court allowed interest only from the date of the judgment. This was correct, State, Through Sabine River Authority v. Miller, 1967, 250 La. 668, 198 So.2d 397; State, Through Sabine River Authority v. Woodard, 1967, 250 La. 679, 198 So.2d 401.

■ The District Court was likewise correct in declining to order that the landowners be reimbursed for attorney's fees, State of Louisiana, Through Dept. of Highways v. Salemi, 249 La. 1078, 193 So.2d 252 (1966).

The Judgment of the District Court, for the reasons hereinabove appearing, will be vacated for further proceedings consistent herewith.

Vacated and remanded.