FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CASUN INVEST, A.G., a Swiss corporation, | No. 22-16273 |
| *Plaintiff-Appellee*, | D.C. No. 2:16-cv-02925-JCM-EJY |
| v. | |
| MICHAEL H. PONDER, an individual; LEZLIE GUNN, an individual, | OPINION |
| *Defendants*, | |
| and | |
| NVWS PROPERTIES, LLC, a Nevada limited liability company, | |
| *Defendant-Appellant*. | |

| | |
|---|---|
| CASUN INVEST, A.G., a Swiss corporation, | No. 22-16275 |
| *Plaintiff-Appellant*, | D.C. No. 2:16-cv-02925-JCM-EJY |
| v. | |

MICHAEL H. PONDER, an
individual; LEZLIE GUNN, an
individual; NVWS PROPERTIES,
LLC, a Nevada limited liability
company,

*Defendants-Appellees.*

CASUN INVEST, A.G., a Swiss
corporation,

*Plaintiff-Appellee*,

v.

MICHAEL H. PONDER, an
individual; LEZLIE GUNN, an
individual; NVWS PROPERTIES,
LLC, a Nevada limited liability
company,

*Defendants-Appellants*.

No. 23-15224

D.C. No.
2:16-cv-02925-
JCM-EJY

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted March 7, 2024
Las Vegas, Nevada

Filed October 15, 2024

Before: Milan D. Smith, Jr., Mark J. Bennett, and Daniel P. Collins, Circuit Judges.

Per Curiam Opinion;
Partial Dissent by Judge Bennett

## SUMMARY[*]

### Nevada Law / Costs

The panel affirmed the district court's judgment following a bench trial in favor of Casun Invest, A.G. for unjust enrichment, and reversed the district court's order granting Casun's motion to retax costs, in a case arising from a dispute over the transfer of a property owned by Casun in Woodside, California.

The panel held that the district court did not err in applying Nevada's four-year statute of limitations to Casun's unjust enrichment claim. The panel agreed with the district court that it could look to the Restatement (Second) of Conflict of Laws, and apply the most specific, applicable section to determine where the unjust enrichment cause of action arose. The most specific, applicable section was Section 221, which applies to claims to recover for unjust enrichment. Accordingly, the panel saw no error in the district court's application of Section 221 to determine that the unjust enrichment claim arose in Nevada, and affirmed

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the district court's holding that Nevada's four-year statute of limitations applied to the unjust enrichment claim.

The panel declined to reach the argument, raised for the first time on appeal, that the unjust enrichment claim was barred because a contract remedy was available to Casun.

The panel reversed the district court's order granting Casun's motion to retax costs. The panel held that the district court erred in concluding that Nevada law applied to the issue of costs because (1) federal law—28 U.S.C. § 1920—answers the precise question in dispute and does so in a way that directly conflicts with Nevada law; and (2) the discretionary cost authority afforded by § 1920 is within Congress's constitutional authority. Because the district court erred in concluding that Nevada law required it to award costs to Casun, and because the district court already determined that, to the extent it had discretion over costs, it would not award costs to either side, the panel reversed the cost award and remanded with instructions to amend the judgment to provide that each party shall bear its own costs.

Dissenting in part, Judge Bennett would affirm the district court's award of costs. Casun is the prevailing party because it succeeded in its unjust enrichment claim and received damages equivalent to the full value of the property. He would find that the Nevada cost statute governs this case, and under Nevada law, the district court correctly awarded costs to Casun.

## COUNSEL

Aaron R. Maurice (argued), Elizabeth Aronson, and Brittany N. P. Wood, Maurice Wood, Las Vegas, Nevada, for Plaintiff-Appellee.

Thomas A. Vogele (argued), Thomas Vogele & Associates APC, Costa Mesa, California; Timothy M. Kowal, Kowal Law Group APC, Newport Beach, California; for Defendants-Appellants.

## OPINION

PER CURIAM:

The case arises from a dispute over the transfer of a property in Woodside, California that was owned by Casun Invest, A.G. ("Casun"). Hans-Peter Wild, sole shareholder of Casun, agreed to transfer the property to his girlfriend Lezlie Gunn (through her company, NVWS Properties[1]) for $2,050,000.[2] Casun transferred the property to NVWS, but no payment was made in return. Casun sued in federal court in Nevada, claiming unjust enrichment, breach of fiduciary duty (and aiding and abetting breach of fiduciary duty), constructive fraud, and civil conspiracy.

---

[1] Casun's *direktor*, Michael Ponder, is a cross-appellee.

[2] There have been several Ninth Circuit cases involving these parties. *See, e.g.*, *Gunn v. Wild*, 771 F. App'x 392 (9th Cir. 2019); *GW Grundbesitz AG v. A. Invs., LLC*, No. 21-16419, 2022 WL 3645062 (9th Cir. Aug. 24, 2022); *Gunn v. Drage*, 65 F.4th 1109 (9th Cir. 2023).

After a bench trial, the district court entered judgment for Casun against NVWS in the amount of $2,050,000 based on the unjust enrichment claim only. The court applied Nevada choice of law principles to determine that Nevada's four-year statute of limitations applied to the unjust enrichment claim. NVWS appealed the judgment, and Casun cross-appealed.[3]

The parties also dispute the costs awarded to Casun. The district court specified in its findings of fact and conclusions of law that each party would bear its own costs. Casun subsequently filed a bill of costs and a motion to retax costs, arguing that Nevada law makes it mandatory for a prevailing party to receive its costs. The district court granted the motion to retax costs and awarded Casun $48,585.44 in costs against NVWS. NVWS appealed the district court's order granting the motion to retax costs.

This case concerns both appeals. We have jurisdiction under 28 U.S.C. § 1291. We hold that the district court did not err in applying Nevada's four-year statute of limitations to the unjust enrichment claim and affirm the district court's judgment. But we reverse the district court's order granting the motion to retax costs.

## I.

In March 2013, Hans-Peter Wild and Gunn arranged for Gunn to purchase the Woodside, California property. Between March 26 and March 28, 2013, Gunn created three Nevada LLCs: Woodside Gate LLC, NVMS Properties LLC

---

[3] The substance of Casun's cross-appeal appears to be that if we find that a shorter limitations period than four years applies, then we should also hold that the district court erred in determining the date that the claim accrued.

(managed by Gunn), and NVWS (managed by NVMS).  On March 31, 2013, Hans-Peter Wild agreed to give Gunn $2,100,000 to allow her to purchase the property for $2,050,000.[4]  Gunn was not obligated to do anything in return.

The same day, Hans-Peter Wild emailed Hans-Rudolf Wild,[5] Casun's sole board member, and Michael Ponder, Casun's *direktor* (selected and authorized by the board of directors to act on behalf of the corporation), stating:

> We have an offer for the house at market price and I think we should sell.  Mike you have the details and please execute the sale with [Hans-Rudolf] Wild.  The house is sold as is and we only need to transfer the title.

Ponder had been removed as Casun's *direktor* on March 21, 2013, and was reappointed on March 28, 2013, effective April 9, 2013.  As *direktor*, Ponder had the authority to execute documents, including grant deeds, on Casun's behalf.  But he was not *direktor* on March 31, 2013, and thus could not transfer the property on that date.

---

[4] According to NVWS, Hans-Peter "Wild [arranged] to sell the Woodside Property to Gunn to protect it from [an] investigation [by German authorities]" and instructed Gunn to create NVWS as a shell company to take title of the property.  Casun claims that Gunn asked Hans-Peter Wild to transfer title of the property to her as a gift to avoid negative publicity arising from prior litigation between Casun and her father, Calvin Gunn, over the ownership of the property.  The district court made no factual findings on this, presumably because it found the parties' reasons for arranging the purchase immaterial.  We agree that this is immaterial.

[5] The two are unrelated.

On April 8, 2013, Hans-Peter Wild wired Gunn $2,100,000. On April 17, 2013, after Ponder was reinstated as Casun's *direktor*, Ponder executed a grant deed conveying the property from Casun to NVWS.[6] Ponder did not provide the grant deed to Hans-Rudolf Wild for review and approval before he executed the document on Casun's behalf. Ponder, Gunn, Hans-Rudolf Wild, and Hans-Peter Wild all resided in Switzerland at the time of the transfer. The grant deed was recorded in San Mateo County, California on April 25, 2013.

On July 17, 2013, Hans-Peter Wild emailed Gunn and Ponder, stating that payment for the property had been overdue for weeks and demanding payment within twenty-four hours. On August 3, 2013, Hans-Peter Wild again emailed Gunn and Ponder, indicating that he still had not received payment or the name or contact information for the buyer of the property.[7] Ponder responded, indicating that the

---

[6] The grant deed states: "For valuable consideration, receipt of which is hereby acknowledged, I (We) Casun Invest, AG, a Switzerland Corporation hereby remise, release and grant to: NVWS Properties LLC, a Nevada LLC the following described real property in the City of Woodside, County of San Mateo, State of California . . . ." The grant deed does not specify the consideration.

[7] The email reads:

> Mike,
> I had asked for the name and contact data of the buyer and have not received any answer. This is unacceptable.
> The purchase price was not received.
> Mike[,] you are a director of Casun, you have been involved in the sale and you are obligated to act on their behalf immediately.

buyer was NVWS.[8]  On August 6, 2013, Hans-Peter Wild emailed Ponder and copied Gunn requesting that the money be wired "without any further delay."  There is no evidence that NVWS paid Casun for the property or provided any other form of consideration.

On December 16, 2016, Casun sued NVWS, Gunn, and Ponder in district court.  After a three-day bench trial, the district court entered judgment for Casun against NVWS,[9] but only on the unjust enrichment claim.[10]

The district court awarded Casun $2,050,000 in compensatory damages and $709,440.41 in prejudgment interest.  In its conclusions of law following the bench trial, the district court specified that "[e]ach party is to bear its own costs and fees."

---

[8] The parties do not explain why Hans-Peter Wild asked for the name and contact information of the buyer.

[9] The district court entered no judgment against Gunn.  The court found that "Casun did not prove by a preponderance of the evidence that Gunn is liable for unjust enrichment" because "[t]he property was transferred to NVWS, not Gunn," and "[t]here [was] no evidence that NVWS is Gunn's alter ego," or that there was an "enforceable contract obligating Gunn to personally complete the transfer with the $2,100,000 that Hans-Peter Wild gave her in 2013."  Casun did not appeal this ruling.

[10] The district court found for the defendants and against Casun on the breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, and civil conspiracy claims.  It found against Casun on the civil conspiracy claim because "Casun did not prove by a preponderance of the evidence that there was an agreement between the defendants to commit any tort."  It found the other claims barred by the applicable statute of limitations.  Casun did not appeal any of these rulings.

Casun nonetheless submitted a bill of costs against NVWS for $48,585.44. NVWS objected to Casun's bill of costs:

Defendant NVWS objects to:

> 1. The entire Bill of Costs on the grounds the Court ordered the parties to bear their own costs;
>
> 2. The entire Bill of Costs on the basis Casun is not the prevailing party because it did not prevail against two defendants, and only prevailed against NVWS on one of five causes of action;
>
> 3. Alternatively, the Bill of Costs should be reduced by two-thirds, as Casun did not receive any relief after trial from two of the three defendants Casun sued; and
>
> 4. Travel costs to take the deposition of Hans Peter Wild and Hans Rudolf Wild, who were clients and/or client representatives of the party that initiated the lawsuit should not be awarded.

Casun responded to NVWS's objection and moved to retax costs. Casun argued that under Nevada Revised Statutes § 18.020(3), a prevailing party seeking to recover more than $2,500 is entitled to recover costs as a matter of right. It also argued that Casun was a prevailing party because, under Nevada law, a party need only win on one of its claims to be considered a prevailing party.

The district court agreed with Casun, granted the motion to retax costs, and directed the clerk to tax $48,585.44 in costs against NVWS, which the clerk did.

## II.

We review de novo choice of law questions and the district court's interpretation of state law. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010). "We apply the clearly erroneous standard to factual findings that underlie the choice of law determination." *Id.* In addition, we "review a district court's costs award for abuse of discretion." *Spirit of Aloha Temple v. Cnty. of Maui*, 49 F.4th 1180, 1195 (9th Cir. 2022). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1189 (9th Cir. 2022) (quoting *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 808 (9th Cir. 2019)).

## III.

## A.

NVWS argues that the district court erred in applying the Nevada statute of limitations to the unjust enrichment claim. We review this choice of law question de novo. *Love*, 611 F.3d at 610.

The district court made these conclusions of law relevant to the unjust enrichment claim:

> 2. Nevada's conflict of law principles dictate which jurisdiction's law applies to each claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), superseded by statute on other grounds.

3. "[T]he Nevada Supreme Court has endorsed looking to the Second Restatement of Conflict of Laws and applying the most specific, applicable section to questions of tort and contract law." *McNamara v. Hallinan*, No. 2:17-cv-02967, 2019 WL 4752265, at *5 (D. Nev. Sept. 30, 2019) . . . .

4. The following sections of the Second Restatement apply to each claim:

. . . .

d. For unjust enrichment, Restatement (Second) [of] Conflict[] of Law[s] § 221.

i. The place where the relationship between the parties, if any, is centered: Switzerland;

ii. The place where the benefit [(the title to the property)] was received: Nevada;

iii. The place where the act conferring the benefit or enrichment was performed: Switzerland (origin of money provided and place where the NVWS Grant Deed was executed);

iv. The domicile of the parties: Switzerland and Nevada;[11] and

---

[11] In its findings of fact, the district court found that Casun is a resident of Switzerland, and NVWS, Ponder, and Gunn are residents of Nevada. The parties do not dispute these findings. Even though the parties who are natural persons resided in Switzerland during the events leading up to this lawsuit, their domicile appears to have changed to Nevada before the complaint was filed. *See Lew v. Moss*, 797 F.2d 747, 752 (9th Cir. 1986) (looking at domicile at the time that the suit was filed to determine diversity jurisdiction).

v. The location of any land or chattel connected to the enrichment: California.

5. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *See* Restatement (Second) Conflict[] of Law[s] §§ 145, 148, 221.

6. Considering the relevant contacts, . . . Nevada law applies to the claim which arose in Nevada—unjust enrichment.

7. Nevada's borrowing statute, Nevada Revised Statute 11.020, provides that:

When a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against the person in this State, except in favor of a citizen thereof who has held the cause of action from the time it accrued.

8. By the date Casun filed this action, December 16, 2016, the statutes of limitations had not run on any of Casun's claims under Swiss law.

. . . .

9. As Swiss law does not bar Casun's claims, the court applies Nevada's statutes of limitations. *See* Restatement (Second) Conflict[] of Law[s] § 142.

. . . .

13. Under Nevada law, Casun's claims for civil conspiracy and unjust enrichment fall under four-year statutes of limitations. *See Siragusa v. Brown*, 114 Nev. 1384, 971 P.2d 801 (Nev. 1998); *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011); NEV. REV. STATS. §§ 11.190(2), 11.220.

a. Accordingly, Casun had until August 3, 2017, to bring these claims. Therefore, the claims are not barred by the applicable Nevada statutes of limitations.

. . . .

16. In Nevada, a claim for unjust enrichment is established when: (a) the plaintiff confers a benefit on the defendant; (b) the defendant appreciates such benefit; and (c) "there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (internal quotations omitted).

17. Casun proved by a preponderance of the evidence that NVWS is liable for unjust enrichment.

a. Casun conferred a benefit—title for the property—to NVWS, NVWS appreciated that benefit by holding the title for and managing the property, and it would be

inequitable for NVWS to retain that benefit without payment of the anticipated purchase price of $2,050,000.

18. Casun did not prove by a preponderance of the evidence that Gunn is liable for unjust enrichment.

a. The property was transferred to NVWS, not Gunn.

b. There is no evidence that NVWS is Gunn's alter ego. *See LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846–47 (Nev. 2000); (ECF No. 230 (dismissing Casun's alter ego claim)).

c. There is no evidence of an enforceable contract obligating Gunn to personally complete the transfer with the $2,100,000 that Hans-Peter Wild gave her in 2013. *See* NEV. REV. STATS. §§ 111.210, 111.220(5).

. . . .

20. The court finds in favor of Casun and against NVWS on Casun's claim for unjust enrichment.

21. The court finds in favor of Gunn and against Casun on Casun's claim for unjust enrichment.

22. Casun is entitled to a judgment in its favor on its unjust enrichment claim for compensatory damages in the amount of the reasonable purchase price.

> 23. The reasonable purchase price is the anticipated purchase price of $2,050,000.

In essence, the district court followed the Nevada Supreme Court's guidance by applying the most specific, applicable section of the Restatement (Second) of Conflict of Laws, which in this case was Section 221, covering restitution and unjust enrichment. *See Gen. Motors Corp. v. Eighth Jud. Dist. Ct. of State of Nev. ex rel. Cnty. of Clark*, 134 P.3d 111, 116 (Nev. 2006). It then applied Section 221 of the Restatement (Second) of Conflict of Laws to find that the Nevada statute of limitations applied to the unjust enrichment claim.

NVWS argues that the district court erred by applying Section 221 of the Restatement instead of Nevada's borrowing statute.[12] NVWS contends that under the borrowing statute, the district court should have applied Switzerland's statute of limitations (or California's statute of limitations). Casun responds that the borrowing statute only bars claims that have arisen outside of Nevada, and thus the borrowing statute is inapplicable because the unjust enrichment claim arose in Nevada.

---

[12] NVWS does not challenge the district court's weighing of the various factors under Restatement section 221. "[We] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief . . . ." *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) (quoting *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986)). Thus, if we determine that the district court properly chose to apply Section 221, we will end our analysis at that point.

First, we agree that Nevada's borrowing statute plainly bars only claims that have arisen outside of Nevada.  The statute provides:

> When a cause of action **has arisen in another state, or in a foreign country**, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against the person in this State . . . .

NEV. REV. STAT. § 11.020 (emphasis added).

We next turn to NVWS's contention that the unjust enrichment claim arose in either Switzerland or California, and thus the district court should have applied the statute of limitations of either and barred the claim.

The Nevada Supreme Court has not yet addressed the question of how to determine where an unjust enrichment cause of action "has arisen," and the parties offer different tests for making this determination.[13]  NVWS argues that we should determine where the cause of action "has arisen" by looking at "where the tort occurred."  It argues that the "tort occurred in Switzerland" because "[e]ach of the parties (or their representatives or stakeholders) resided in Switzerland at the time the transaction was effected . . . . Thus, the grant deed was executed, delivered, and accepted in Switzerland . . . ."  NVWS makes the alternative argument that "if the Swiss statute of limitations does not apply, then Casun's cause of action 'arose' in California, because the

---

[13] No party disputes that, under NEV. REV. STAT. § 11.020, we must determine where the unjust enrichment claim arose.

subject property is located there and the deed was recorded there."

Casun argues that the district court's analysis was correct because "'substantive' choice-of-law principles may be utilized as guidance when considering the applicable statute of limitations." As such, it is appropriate to consider the most specific and applicable section of the Restatement (Second) of Conflict of Laws, here Section 221, dealing with restitution and unjust enrichment. Casun also argues that NVWS improperly relies on Nevada authority regarding tort claims, as here we are dealing with an unjust enrichment claim.

"Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)). "Nevada tends to follow the Restatement (Second) of Conflict of Laws (1971) in determining choice-of law questions involving contracts," *Progressive Gulf Ins. Co. v. Faehnrich*, 752 F.3d 746, 750 (9th Cir. 2014), and "unjust enrichment is a quasi-contractual claim" in Nevada, *Carter v. Ethicon, Inc.*, No. 2:20-cv-1232, 2021 WL 1226531, at *4 (D. Nev. Mar. 31, 2021); *see also Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256–58 (Nev. 2012). Thus, we agree with Casun and the district court that we can "look[] to the Second Restatement of Conflict of Laws and apply[] the most specific, applicable section" to determine where the unjust enrichment cause of action arose. *McNamara v. Hallinan*, No. 2:17-cv-02967, 2019 WL 4752265, at *5–6 (D. Nev. Sept. 30, 2019) (looking to Section 221 of the Restatement (Second) of Conflict of Laws as the "most specific, applicable section" for an unjust enrichment claim).

The most specific, applicable section is Section 221, which "applies to claims . . . to recover for unjust enrichment." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 221 cmt. a (AM. L. INST. 1971). Section 221 states:

> (1) In actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
> > (b) the place where the benefit or enrichment was received,
> > (c) the place where the act conferring the benefit or enrichment was done,
> > (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
> > (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

>These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 221.

We see no section more applicable than Section 221 to an unjust enrichment claim, and NVWS offers no alternatives.[14] *McNamara*, 2019 WL 4752265, at \*5–6 ("As a general matter, the Nevada Supreme Court has endorsed looking to the Second Restatement of Conflict of Laws and applying the most specific, applicable section to questions of tort and contract law . . . . In light of this authority, this Court will look to . . . § 221 [of the Restatement (Second) of Conflict of Laws] dealing with unjust enrichment."). We therefore see no error in the district court's application of Section 221 of the Restatement (Second) of Conflict of Laws to determine that the unjust enrichment claim arose in Nevada.[15]

Accordingly, we affirm the district court's holding that Nevada's four-year statute of limitations applies to the unjust

---

[14] While NVWS discusses Section 142 of the Restatement (Second) of Conflict of Laws, it only uses Section 142 to support that the borrowing statute should apply, and not that § 142 should be used to determine where the unjust enrichment claim arose. And NVWS offers no reason to treat an unjust enrichment claim as a tort claim and apply NVWS's proposed test—"where the tort occurred"—instead of Section 221.

[15] As noted above, NVWS does not challenge how the district court weighed the Section 221 factors—it argues only that Section 221 should not apply. *See supra* n.12.

enrichment claim.[16]  *See In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (stating that, under Nevada law, "[t]he statute of limitation for an unjust enrichment claim is four years" (citing NEV. REV. STAT. § 11.190(2)(c))).

## B.

NVWS also argues that the unjust enrichment claim was barred because a contract remedy was available to Casun. But we decline to reach this argument because NVWS raised it for the first time on appeal.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1108 (9th Cir. 2001) ("Generally, an appellate court will not hear an issue raised for the first time on appeal.  We may decline to reach an issue if it was not raised sufficiently for the trial court to rule on it." (citations and quotation marks omitted)).

## C.

We next address the district court's order granting the motion to retax costs.

As noted earlier, the district court specifically stated, in its written findings of fact and conclusions of law, that "[e]ach party is to bear its own costs."  Accordingly, when Casun nonetheless proceeded to submit a bill of costs, the Clerk cited the court's prior ruling and declined to award costs.  Casun moved to retax costs, contending that Nevada law, rather than federal law, governed the availability of costs and that Nevada law mandated an award of costs to Casun.  The district court agreed, granted Casun's motion, and awarded Casun $48,585.44 in costs.  We hold that the

---

[16] Because we hold that Nevada's four-year statute of limitations applies, we do not address Casun's alternative argument on cross-appeal challenging the district court's finding that the unjust enrichment claim accrued on August 6, 2013.

district court erred in concluding that Nevada law applied to the issue of costs.

In resolving asserted "conflicts between state law and the Federal Rules," the Supreme Court has established a two-step test. *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4 (1987). At the first step, a court must determine whether a relevant federal rule "answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see also Burlington*, 480 U.S. at 4–5 (framing the question as whether a relevant federal rule "is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law" (simplified)). If a federal rule does answer the question in dispute, then the federal rule must be applied "unless it exceeds statutory authorization or Congress's rulemaking power." *Shady Grove*, 559 U.S. at 398; *see also Burlington*, 480 U.S. at 5 (stating that an applicable federal rule controls "if it represents a valid exercise of Congress' rulemaking authority, which originates in the Constitution and has been bestowed on th[e] [Supreme] Court by the Rules Enabling Act, 28 U.S.C. § 2072").

Here, it is clear that federal law answers the precise question in dispute and does so in a way that directly conflicts with Nevada law. Section 1920 of Title 28 of the United States Code provides that "[a] judge or clerk of any court of the United States *may* tax as costs" a list of six enumerated categories of costs. 28 U.S.C. § 1920 (emphasis added). That discretion to award or deny costs is likewise reflected in Federal Rule of Civil Procedure 54(d), which states that, absent a contrary provision in a federal statute, rule, or court order, costs "*should* be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1) (emphasis

added).  Nevada law, by contrast, states that "[c]osts *must* be allowed of course to the prevailing party against any adverse party against whom judgment is rendered" in, *inter alia*, "an action for the recovery of money or damages, where the plaintiff seeks to recover more than $2,500."  NEV. REV. STAT. § 18.020(3) (emphasis added).[17]  Moreover, this clear conflict between federal and Nevada law is perfectly illustrated by the facts of this case: when the district court believed that it had discretion whether to award costs, it explicitly declined to do so, and it thereafter awarded such costs *only* because it concluded that Nevada's mandatory cost-shifting requirement applied here.[18]

Because federal law "answers the question in dispute," *Shady Grove*, 559 U.S. at 398, we proceed to the second step of the analysis, which generally asks whether the federal rule exceeds either constitutional limits or statutory limits.  *Id.*  In the context of the Federal Rules of Civil Procedure, which were promulgated under the Rules Enabling Act, the second step's statutory inquiry requires the court to consider

---

[17] Because neither side has contended that the scope of the costs recoverable in this case would differ depending upon whether federal law or Nevada law is applied, we have no occasion to consider the significance, if any, of any such possible difference.

[18] The dissent's reliance on *Clausen v. M/V New Carissa*, 339 F.3d 1049 (9th Cir. 2003), is unavailing.  In finding that state law controlled the recovery of expert witness costs in that case, we relied on the view that the state provision at issue there was a "*damages provision*" that allowed the plaintiff to recover such costs "as *one element of its compensatory damages*."  *Id*. at 1064 (emphasis in original).  There is no support for the view that Nevada law treats the costs covered by § 18.020(3) as an item of compensatory "damages."  On the contrary, the statute on its face treats "[c]osts" as distinct from "damages."  *See* NEV. REV. STAT. § 18.020(3) (allowing "[c]osts" where "damages" sought exceed $2,500).

whether the relevant rule satisfies the Rules Enabling Act's requirement that the rule must not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *see also Burlington*, 480 U.S. at 5 (identifying this as an "additional requirement" that must be met in addition to constitutional requirements).   In *Shady Grove*, the Court was sharply divided as to whether the federal rule in question altered the parties' "substantive right[s]" under New York law in violation of the Rules Enabling Act; indeed, the Justices in the majority did not even agree as to the standards governing that inquiry.  559 U.S. at 407, 410–15 (plurality); *id*. at 424–28 (Stevens, J., concurring in part and in the judgment); *id*. at 448 n.7 (Ginsburg, J., dissenting).  In this case, however, we need not wade into any such issue.  Here, the relevant "rule" governing costs—*viz*., that they may be awarded or declined at the discretion of the court—is contained in a federal *statute*, *i.e.*, § 1920.  Rule 54(d) merely replicates that discretion, accompanied by hortatory language about what courts "should" ordinarily do.  Because Rule 54(d) adds nothing material to what is already contained in § 1920, our inquiry at the second step is greatly simplified.  Because § 1920—a statute—itself controls the relevant federal question, we have no need, at the second step, to address any question of statutory authorization under the Rules Enabling Act.   The only question, therefore, is whether the discretionary cost authority afforded by § 1920 is within Congress's constitutional authority.

The Supreme Court has held that Congress's constitutional power to establish lower federal courts, together with its authority under the Necessary and Proper Clause, gives Congress the "power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling

within the uncertain area between substance and procedure, *are rationally capable of classification as either*." *Hanna v. Plumer*, 380 U.S. 460, 472 (1965) (emphasis added). Accordingly, it is irrelevant here whether § 1920's grant of discretionary cost-shifting authority might reasonably be viewed as a "substantive" rule that conflicts with Nevada's contrary "substantive" rule. All that matters here is whether § 1920 is "'rationally capable of classification' as [a] *procedural* rule[]"; if it is, then it falls within Congress's power to enact laws that are "necessary and proper for carrying into execution the power to establish federal courts vested in Congress by Article III, § 1." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988) (emphasis added) (quoting *Hanna*, 380 U.S. at 472). We have little difficulty concluding that § 1920 satisfies this standard. Because § 1920 deals exclusively with allocating costs that arise in connection with the various stages of conducting the federal litigation itself, it may be rationally classified as a "procedural rule[]." *Id*. That is, Congress could rationally classify, as procedural, § 1920's rule about allocating the costs associated with performing the various *procedural steps* of the litigation in federal court.

Because § 1920 controls the question at issue and is constitutional, it applies in this case. The district court therefore erred as a matter of law in concluding that Nevada law applied so as to require it to award costs to Casun. And because the district court had already determined that, to the extent it had discretion over costs, it would not award costs to either side, we reverse its cost award and remand with instructions to amend the judgment to provide that each party shall bear its own costs.

## IV.

For the reasons stated above, we **AFFIRM** the district court's judgment and **REVERSE** its order granting the motion to retax costs.[19]

---

BENNETT, Circuit Judge, dissenting in part:

Because I would affirm the district court's award of costs, I respectfully dissent in part.

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995)). "An award of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d), even in diversity cases." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003). But "if a cost statute confers a substantive right, then the district court allows costs under that statute." *Atwell v. Cent. Fla. Invs., Inc.*, No. 15-cv-02122, 2020 WL 13138255, at *2 (D. Nev. Dec. 1, 2020) (citing *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064–65 (9th Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003)).

In *Clausen*, we held that an Oregon cost statute was substantive because there was "an 'express indication' of [the] state legislature's 'special interest in providing litigants' with full compensation for reasonable sums

---

[19] Each party shall bear its own costs on appeal.

expended in pursuit of an Oil Spill Act claim."[1]  339 F.3d at 1065 (quoting *Chevalier v. Reliance Ins. Co. of Ill.*, 953 F.2d 877, 886 (5th Cir. 1992)).  We reasoned:

> Because the measure of damages is a matter of state substantive law, it would do violence to the principles enunciated in *Erie* to disregard Oregon law in favor of [the federal cost provision].  *See Erie*, 304 U.S. at 78 ("Congress has no power to declare

---

[1] The majority's characterization of *Clausen*'s holding as limited to state "damages" provisions is too narrow.  Op. at 23 n.18.  *Clausen*'s emphasis on the fact that the Oregon cost statute was a "state damages provision" was an attempt to distinguish *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160 (9th Cir. 1995), in which the choice of law issue between the federal and state cost provisions did not affect a party's "entitlement to costs," but affected only the "level of reimbursement."  *Id.* at 1167.  By contrast, the choice of law issue here does affect a party's entitlement to costs. Moreover, *Clausen* itself relied heavily on *Henning v. Lake Charles Harbor & Terminal Dist.*, 387 F.2d 264 (5th Cir. 1968), which held that the reimbursement of expert fees—"by whatever name called" (i.e., "costs" or "damages")—"is a substantive requirement of [state] law" and "a substantive right of the [plaintiffs]."  387 F.2d at 267.  What matters is not what the subject of reimbursement is called, but whether there is "an express indication from the [state] legislature, or its courts, of [the state]'s special interest in providing litigants with [its] recovery." *Clausen*, 339 F.3d at 1065 (quoting *Chevalier*, 953 F.2d at 886); *see also In re USA Com. Mortg. Co.*, 802 F. Supp. 2d 1147, 1185 (D. Nev. 2011) (applying "state substantive law" to award costs to prevailing parties pursuant to Nev. Rev. Stat. § 18.020 "as compensatory damages under Nevada law").  The Nevada cost statute contains an express statutory mandate entitling prevailing parties to costs, made by the Nevada Legislature and recognized by the Nevada Supreme Court.  *See WPH Architecture, Inc. v. Vegas VP, LP*, 360 P.3d 1145, 1148 (Nev. 2015) ("[W]e hold that . . . [Nev. Rev. Stat. §] 18.020 [is a] substantive law . . . . [The statute] *requires* the award of costs to the prevailing party in several types of district court actions." (emphasis added)).

> substantive rules of common law applicable
> in a State . . . .").

*Id.* at 1065–66 (cleaned up) (quoting *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 122 (2d Cir. 1991)).

Following this principle, I would find that Nevada's cost statute confers a substantive right. The Nevada Legislature provided an express statutory mandate that "[c]osts *must* be allowed of course to the prevailing party" in certain types of cases, including suits for damages "where the plaintiff seeks to recover more than $2,500." Nev. Rev. Stat. § 18.020 (emphasis added); *see also Coker Equip. Co. v. Wittig*, 366 F. App'x 729, 733 (9th Cir. 2010) ("Under Nev. Rev. Stat. § 18.020,[2] the prevailing party in an action alleging more than $2,500.00 in damages is entitled to recover all costs *as a matter of right*." (emphasis added)). Thus, I would join the other courts within this circuit in holding that Nev. Rev. Stat. § 18.020 confers a substantive right. *See Jacobi v. Ergen*, No. 12-cv-02075, 2016 WL 7422642, at *1 (D. Nev. Dec. 21, 2016) ("Because [Nev. Rev. Stat. § 18.020 provides] an express statutory mandate, I find that reimbursement under [Nev. Rev. Stat.] § 18.005 is a substantive right and therefore controls over FRCP 54(d) here."); *Atwell*, 2020 WL 13138255, at *2 ("The Court finds that Nev. Rev. Stat[.] § 18.020 creates a mandatory award of costs in cases where the Plaintiffs seek[] more than $2,500 in damages . . . . This statutory scheme sets forth substantive provisions for the categories of costs that may be recovered and is not simply procedural. The Court therefore finds that [Nev. Rev. Stat.] § 18.020 confers a substantive right that may be enforced in

---

[2] In addition, Nev. Rev. Stat. § 18.005 enumerates specific categories of fees that qualify as "costs" under the statutory scheme.

this case."); *Bustos v. Dennis*, No. 17-cv-0822, 2021 WL 7829774, at *2 (D. Nev. July 12, 2021) ("Because this is an express statutory mandate, the Court finds that reimbursement under [Nev. Rev. Stat.] § 18.005 [and § 18.020] is a substantive right and therefore trumps FRCP 54(d)."); *Hendrix v. Progressive Direct Ins. Co.*, No. 20-cv-01856, 2024 WL 472457, at *3 (D. Nev. Feb. 7, 2024) ("[T]he Court finds that [Nev. Rev. Stat. §] 18.020 confers a substantive right and applies here."); *see also Coker*, 366 F. App'x at 733–34 (remanding for reconsideration and explanation of why costs were not awarded pursuant to Nev. Rev. Stat. § 18.020 in a diversity suit).

I believe the majority's analysis of the conflict between the Nevada cost statute and federal law is incomplete in two ways. First, the majority limits its analysis of the relevant federal law to 28 U.S.C § 1920 because "Rule 54(d) adds nothing material to what is already contained in § 1920." Op. at 24. But Rule 54(d) does add something material: it specifies that "costs . . . *should* be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1) (emphasis added), which we have interpreted as "creat[ing] a presumption for awarding costs to prevailing parties" and requiring a district court to "'specify reasons' for its *refusal* to tax costs to the losing party,"[3] *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003) (quoting *Assoc. of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000); *Subscription Television, Inc. v. S. Cal. Theatre Owners*

---

[3] In its order granting Casun's motion to retax costs, the district court acknowledged the requirement to "specify reasons for its *denial of costs* only." Because the district court provided no such reasons in previously concluding that each party should bear its own costs, I do not agree with the majority's characterization of the district court's earlier decision as "explicitly declin[ing]" to award costs to Casun. Op. at 23.

*Ass'n*, 576 F.2d 230, 234 (9th Cir. 1978)); *see also Champion Produce*, 342 F.3d at 1022. While § 1920 enumerates categories of costs that "[a] judge or clerk of any court of the United States may tax," it does not specify who should bear those costs. 28 U.S.C § 1920. Yet the majority drops Rule 54(d) from its analysis for "replicat[ing]" § 1920. Op. at 24.

Focusing exclusively on § 1920 brings the second-step inquiry to a premature end. As the majority explains, when the relevant federal law "answers the question in dispute," the second step is to determine "whether the federal rule exceeds either constitutional limits or statutory limits." Op. at 23 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). And, as the majority explains, "[i]n the context of the Federal Rules of Civil Procedure, which were promulgated under the Rules Enabling Act, the second step's statutory inquiry requires the court to consider whether the relevant rule satisfies the Rules Enabling Act's requirement that the rule must not 'abridge, enlarge or modify any substantive right'"—or else it may not govern. Op. at 23–24 (quoting 28 U.S.C. § 2072(b)). By sidelining Rule 54(d), the majority skips this required statutory inquiry. For the reasons above, I would find that Nev. Rev. Stat. § 18.020, which mandates the award of costs to the prevailing party, confers a substantive right. That right is abridged by Rule 54(d), which does not contain the same mandate. Thus, I would find that the Nevada cost statute governs this case, entitling the prevailing party to the recovery of costs.

Casun is the prevailing party because it succeeded in its unjust enrichment claim and received damages equivalent to the full value of the property. Under Nevada law, a party need only win on one claim to be considered a prevailing

party. *Golightly & Vannah, PLLC v. TJ Allen, LLC*, 373 P.3d 103, 107 (Nev. 2016) ("A prevailing party must win on at least one of its claims."); *see also Valley Elec. Ass'n v. Overfield*, 106 P.3d 1198, 1200 (Nev. 2005) ("A party can prevail under [Nev. Rev. Stat. §] 18.010 'if it succeeds on any significant issue in litigation which achieves some of the benefit it sought in bringing suit.'"). The district court correctly awarded costs to Casun as the prevailing party, and thus I respectfully dissent, in part.